[712 NYS2d 465]

Yolanda Mason, Appellant, v U.E.S.S. Leasing Corporation et al., Respondents. (And a Third-Party Action.)

First Department, August 3, 2000

**APPEARANCES OF COUNSEL**

*James W. Hubert* (*Jack Lester* on the brief), for appellant.

*Daniel I. Berk* of counsel (*Bivona & Cohen, P. C.,* attorneys), for U.E.S.S. Leasing Corporation and another, respondents.

*Michael J. Pearsall* of counsel (*Marshall, Conway & Wright, P. C.,* attorneys), for Mid-City Security Service, Inc., respondent.

### OPINION OF THE COURT

ANDRIAS, ·J.

Shortly after seven o'clock in the morning of July 11, 1992, plaintiff was awakened by a phone call from her live-in boyfriend, who was in a store across the street and wanted to know if she needed anything from the store. According to plaintiff, he told her he would be upstairs in five minutes. Plaintiff then lay down again to wait for her boyfriend. Shortly thereafter, the doorbell to the apartment rang and, thinking it was her boyfriend, she opened the door without looking through the peephole in the door or asking who it was. At the door was the six-foot, four-inch, 260-pound third-party defendant Lawrence Toole, who ,appeared to be "on something" and who grabbed plaintiff by the neck, dragged her into the bedroom and raped and sodomized her.

"In premises security cases * * * the necessary causal link between a landlord's culpable failure to provide adequate security and a tenant's injuries resulting from a criminal attack in the building can be established only if the assailant gained access to the premises through a negligently maintained entrance. Since even a fully secured entrance would not keep out another tenant, or someone allowed into the building by another tenant, plaintiff can recover only if the assailant was an intruder." (*Burgos v Aqueduct Realty Corp.,* 92 NY2d 544, 550-551.)

Trial Term, in the order appealed from, granted the motion of defendants and third-party plaintiffs (collectively referred to as landlord) and the cross motion of defendant security service for summary judgment dismissing the complaint. In so ruling, the court found that plaintiff's deposition testimony established that the landlord took minimal security precautions and that there was a failure to show that any claimed negligence was a proximate cause of plaintiff's injuries. We disagree.

Despite the fact that the landlord had a security guard stationed in the common lobby and that the buildings in the Lefrak City complex had a working intercom system and locked inner and outer doors, a question of fact is presented as to

whether or not defendants negligently permitted plaintiff's attacker into her building, 97-30 57th Avenue, where, according to plaintiff, the attacker, a nonresident who had grown up in Lefrak City, was widely known as a troublemaker to both security personnel and the complex's residents, including plaintiff. It is of no moment to the attacker's status as an intruder that his mother may have lived in a related but separate and distinct building, 97-22 57th Avenue. Furthermore, according to defendant security service, his photograph was also contained in its "photo book," containing pictures of persons arrested in the premises.

This case is distinguishable on its facts from two other peephole cases discussed by the motion court, *Elie v Kraus* (218 AD2d 629, *lv denied* 88 NY2d 842) and *Benitez v Paxton Realty Corp.* (223 AD2d 431), both of which predate the Court of Appeals decision in *Burgos* and have previously been distinguished by this Court (*see, Carmen P. v PS&S Realty Corp.*, 259 AD2d 386, 389). In *Elie,* plaintiff lived in a garden apartment complex laid out in a series of two-story buildings with access provided through a ground-level door which led to two units. The previous locks on the buildings' outer doors had been removed in favor of new inner apartment doors with an extra deadbolt and a peephole. Thus, the individual tenant's own apartment doors were the main line of defense against intruders (*see, Carmen P. v PS&S Realty Corp., supra*) and buzzing open his door without first checking who was at the door, after dark, despite the fact that he had a peephole in his front door, was found by this Court to be an intervening cause of the attack, thus severing the landlord of liability.

In *Benitez,* there was no proof whatsoever as to the manner in which plaintiff's assailant gained access to the building and this Court, applying the pre-*Burgos* standard, held that plaintiff could not prove that defendant's negligence, if any, was the proximate cause of his injuries. Continuing, in what was essentially dicta, the Court, relying upon *Elie,* stated that "plaintiff's act of opening the locked apartment door, without checking who was at the door, after dark, despite the fact that [there was] a peephole, was an intervening cause of the assailants' attack, severing any liability of [the landlord] for failure to provide adequate security" (223 AD2d, *supra,* at 432).

As noted, both *Elie* and *Benitez* predated the Court of Appeals decision in *Burgos* and, to the extent that they decided, as a matter of law, the issue of whether an intervening act severed the causal relationship between a landlord's alleged

negligence in providing security against intruders and the ability of the intruder who attacked plaintiff to gain access to his or her apartment, that issue is better left to a jury given the facts alleged in this case (*see, Allen v New York City Hous. Auth.*, 194 AD2d 427).

"Depending upon the nature of the case, a variety of factors may be relevant in assessing legal cause. * * * Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence * * *. If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus * * *. Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve [,although] [t]here are certain instances, to be sure, where only one conclusion may be drawn from the established facts and where the question of legal cause may be decided as a matter of law. Those cases generally involve independent intervening acts which operate upon but do not flow from the original negligence" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 314-315 [citations omitted]).

Given the circumstances of this case, it cannot be said, as a matter of law, that plaintiff's opening of her apartment door, without looking through the peephole or inquiring who was at the door, was an independent intervening act which did not flow from defendants' alleged negligence in permitting a known troublemaker to enter the premises and gain access to plaintiff's apartment, thus relieving defendants of any liability.

Indeed, in *Burgos (supra)*, although there was no mention of a peephole, the plaintiff opened her apartment door and entered the hallway one spring afternoon, when two men pushed her back into her apartment, where they beat and robbed her. In the instant case, plaintiff, without any phone call from her boyfriend, could just as likely have opened her apartment door without looking through the peephole if she were on her way to work or even if she were taking out the garbage. The circumstances and the effect of her opening the door on the issue of an independent intervening act or, for that matter, proximate cause or comparative negligence are best left to a jury to decide.

Accordingly, the order of the Supreme Court, Bronx County (Michael DeMarco, J.), entered on or about February 9, 1999, which granted plaintiff's motion for renewal and, upon renewal and consideration of plaintiff's opposing papers, granted the motion of defendants U.E.S.S. Leasing Corporation and Builders and Realtors Corporation and the cross motion of defendant Mid-City Security Service, Inc. for summary judgment dismissing the complaint, should be reversed, to the extent appealed from as limited by the briefs, on the law, without costs, defendants' motion and cross motion should be denied, the complaint reinstated and the matter remanded for further proceedings.

TOM, J. (dissenting). Plaintiff resided in an apartment building owned by defendants U.E.S.S. Leasing Corporation and Builders and Realtors Corporation with security provided by defendant Mid-City Security Services, Inc. A few minutes before 7:00 A.M. on July 11, 1992, plaintiff's boyfriend telephoned her, indicating that he was at a nearby store and that he expected to arrive in a few minutes. The boyfriend had keys to the entrance of the guarded building and to one of the two locks on her own door. When the door bell rang, she opened it without looking through the peephole or otherwise ascertaining who rang the bell, on the assumption that it was her boyfriend. It was not. Rather, Lawrence Toole pushed his way in and attacked her. She recognized Toole as a nonresident who nonetheless often was in the apartment complex, where his family resided. An employee of the security company testified that Toole, who had grown up on the premises, was well known to residents, that his name was in a photo book identifying persons arrested on the premises, but at the time of the incident, Toole was not restricted from the premises. The subject building was equipped with an intercom and a door buzzer system which were functioning on the day of the incident. A security guard was stationed on a 24-hour basis in the front lobby of the building. Plaintiff's apartment entrance door was equipped with two locks and a peephole.

The IAS Court found on the basis of this evidence that the landlord had taken the necessary minimal security precautions required, that plaintiff had failed to show that defendants' negligence proximately caused her injuries, and that, in any event, her act of unlocking both locks without first looking through the peephole or otherwise ascertaining who rang her bell constituted intervening causation relieving the landlord of liability.

It is well established that landlords have a "common-law duty to take minimal precautions to protect tenants from foreseeable harm," including foreseeable criminal conduct by a third party (*Jacqueline S. v City of New York*, 81 NY2d 288, 293-294, *rearg denied* 82 NY2d 749), but that, as a predicate to recovery of damages in tort, the tenant must establish that the injury was proximately caused by the landlord's breach of its duty of care (*cf., Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 548; *Miller v State of New York*, 62 NY2d 506, 509). Of course, a tenant also incurs a responsibility to act reasonably when giving entrance to a third party (*S.M.R.K., Inc. v 25 W. 43rd St. Co.*, 250 AD2d 487, *lv denied* 92 NY2d 817; *Benitez v Paxton Realty Corp.*, 223 AD2d 431; *Elie v Kraus*, 218 AD2d 629, *lv denied in part and dismissed in part* 88 NY2d 842). We have found under analogous circumstances that furnishing a security guard in the lobby, and functioning locks and peepholes on doors, could constitute reasonable security measures (*S.M.R.K., Inc. v 25 W. 43rd St. Co., supra*).

Plaintiff, though, contends that Toole's presence at the premises foreseeably created the risk of assaultive conduct and that defendants failed to address that risk by restricting Toole from the building, a plausible theory of liability generally presented for a jury's consideration (*see generally, Jacqueline S. v City of New York, supra; Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519). However, we have consistently held that a plaintiff's own conduct of responding to a knock or a ring by opening a locked apartment door that contains a peephole without first looking through the peephole to ascertain who is on the other side constitutes intervening and superseding causation that breaks the causal chain and severs the landlord's liability, if any (*Benitez v Paxton Realty Corp., supra; Elie v Kraus, supra; S.M.R.K., Inc. v 25 W. 43rd St. Co., supra*), even when the landlord's own security measures were not reasonable (*cf., S.M.R.K., Inc. v 25 W. 43rd St. Co., supra*) and even when the tenant's conduct is readily explainable (*supra*). In *Elie (supra)*, the tenant's wife went to a nearby store to buy milk. Shortly thereafter, the doorbell rang and the tenant, believing it was his wife, opened the door without checking who was at the door, despite the fact that he had a peephole. Three intruders burst into the apartment and shot the tenant. There, we found tenant's action to be an intervening cause absolving the landlord of liability.

The majority concludes that the subsequently decided *Burgos* consolidated ruling requires the application of a new stan-

dard, but *Burgos*, by its own terms, does not support such a conclusion. Rather, *Burgos* addressed the very different situation, factually and legally, of the landlord's duty regarding exclusion of intruders. Parenthetically, in the *Burgos* portion of that ruling, the victim was assaulted as she exited her apartment and entered the common area of a hallway, and not when the tenant without ascertaining who is on the other side opens the locked apartment door for the perpetrator. In the *Gomez* portion of the ruling, the victim was assaulted on the roof. Both parts of the ruling, though, charting a new course in contrast to our own prior line of authority addressing a landlord's exoneration when the nontenant or nonguest status of the perpetrator could not be established, turned on whether the particular assailants had been "intruders." In *Burgos* and pre-*Burgos* case law, intruders were characterized generally as nonresidents who often, though not necessarily, were unknown. The present assailant, though a nonresident, was a familiar person with family members residing in the apartment complex whom he presumably visited. Thus he would not logically fit that description under these circumstances. The assailant's mother and sister resided in the apartment complex. As such, *Burgos*, modifying our line of authority addressing assaults by nonresident and nonguest intruders, leaves unaffected our line of authority addressing the tenant's own duty to ascertain who is at the door.

The majority presumably relies on some phrasing in *Burgos* indicating that to withstand summary judgment, the plaintiff must only raise a triable issue regarding whether the landlord's conduct proximately caused the injury, a burden satisfied despite the possibility of other proximate causes. But, again, the procedural point does not fit these facts, where our own extant authority, unaffected by *Burgos*, severs the landlord's liability as a matter of law when the tenant's failure to look through the peephole constitutes intervening and superseding causation.

Further, despite the majority's efforts to distinguish the present case from our prior, and still viable, rulings in *Elie* (*supra*) and *Benitez* (*supra*), the basic point remains the same—we have exclusively reposed responsibility for assaults within the apartment on tenants who provided access to perpetrators, albeit inadvertently, by failing to ascertain, despite the availability of means to do so, who was at the door.

Plaintiff's reliance on *Madera v New York City Hous. Auth.* (264 AD2d 579) and *Carmen P. v PS&S Realty Corp.* (259 AD2d

386) is also misplaced. In *Madera* (*supra*), the landlord apparently provided inadequate security, there was significant evidence of prior criminal activity in the building, and there was evidence that the apartment occupants had looked through a peephole, after which the robbers pushed their way in, notwithstanding the presence of a security chain. This evidence presented a sufficient factual question for resolution by the jury on the respective duties of landlord and tenant. In *Carmen P.*, a push-in rape in an apartment in a high-crime building basically left unsecured, we largely addressed the *Burgos* issue of whether the perpetrator was an intruder, which required an evaluation of the building's security. The separate question of the victim's own responsibility to ascertain who was at the door prior to providing access, though, turned in that case on the duty appropriate to the 14-year-old victim, which we specifically distinguished from the duties we imposed on the adult victims in *Elie* (*supra*) and *Benitez* (*supra*). Notably, in remanding for trial just last year on that factual issue of what duty to impose for a child, we did not depart from the basic doctrine of those rulings which continues to apply for the adult victim in the present case.

Accordingly, the dismissal of the complaint should be affirmed, without costs.

NARDELLI, J. P., and MAZZARELLI, J., concur with ANDRIAS, J.; TOM and BUCKLEY, JJ., dissent in a separate opinion by TOM, J.

Order, Supreme Court, Bronx County, entered on or about February 9, 1999, reversed, to the extent appealed from as limited by the briefs, on the law, without costs, defendants' motion and cross motion for summary judgment dismissing the complaint denied, the complaint reinstated and the matter remanded for further proceedings.