*491 Order, Supreme Court, New York County (Joan A. Madden, J.), entered July 28, 2009, which, insofar as appealed from, denied the motion of defendants Esplanade Gardens, Inc. and Prestige Management, Inc. (collectively, Esplanade) for summary judgment dismissing the complaint as against them, and denied so much of the cross motion of defendant Securitas Security Services USA, Inc. for summary judgment dismissing Esplanade’s cross claim against it for contractual indemnification, unanimously reversed, on the law, without costs, and the motion and cross motion granted.
On the morning of March 31, 2005, plaintiff heard a knock on the door of his apartment in Esplanade’s building. He looked through the peephole and saw his former girlfriend, Maria Smith, who identified herself. Only a few days before, plaintiff had broken off his year-long relationship with Smith because his fiancée was being released from prison. Smith had not been announced to plaintiff through the intercom system when she entered the building. When plaintiff opened the door, Smith was followed into the apartment by a man plaintiff had not seen through the peephole. The man turned out to be Patrick Mulligan, another boyfriend of Smith’s. After an exchange of harsh words, Mulligan allegedly attacked plaintiff, seriously injuring him.
The record contains evidence indicating that a security guard stationed in the building’s lobby permitted Smith and Mulligan to enter the building but failed to announce them to plaintiff over the intercom. This was consistent with the practice of the building’s security staff over the preceding year, during which Smith, who lived across the street, had been a frequent visitor to plaintiffs apartment while she was his girlfriend. When Smith visited the building, she was always allowed to proceed to plaintiffs apartment without being announced, without objection by plaintiff. Further, there is no evidence that, upon the termination of his relationship with Smith, plaintiff told the security staff to stop allowing her into the building.
In this action, plaintiff sues Esplanade, the owner of the building, for the injuries Mulligan inflicted on him, on the theory that Esplanade’s negligence enabled Mulligan to enter the building. Specifically, plaintiff claims that the security guard *492 stationed in the lobby by Securitas, Esplanade’s security contractor, should have announced Smith and Mulligan to plaintiff through the intercom before allowing them to proceed to his apartment. To the extent that Smith and Mulligan may have entered the building through one of the unlocked and unguarded side doors, plaintiff contends that Esplanade was negligent in failing to keep these doors locked. ,
On appeal, Esplanade argues that there was no history of criminal activity in the building that would have rendered an attack of this kind foreseeable. Esplanade failed, however, to raise this issue before the motion court. Accordingly, although there is no evidence, of previous crimes in the record, we are required to assume, for. purposes of this appeal, that, in light of past experience, residents of plaintiffs building faced a foreseeable risk of harm from criminal acts by intruders, from which Esplanade, as landlord, was required to take minimal precautions to protect them (see Burgos v Aqueduct Realty Corp. 92 NY2d 544, 548 [1998]). Nonetheless, it is plain that, on this record, the attack on plaintiff was not proximately caused by any breach of this duty.
As previously indicated, Smith, a person well known to the building’s security staff, was a frequent visitor to plaintiffs apartment and, for the previous year, plaintiff had not objected to the security staffs consistent practice of allowing her into the building unannounced. There is no evidence whatsoever that anything should have put the guard on duty on notice that Smith and the man accompanying her were entering the building on the morning in question with the intention of doing plaintiff harm. Because the specifically targeted attack on plaintiff was in no way a predictable result of allowing Smith and her companion into the building, the harm to plaintiff was not proximately caused by Esplanade’s negligence, if any (see Burgos, 92 NY2d at 550; Maria T. v New York Holding Co. Assoc., 52 AD3d 356, 359-360 [2008], lv denied 11 NY3d 708 [2008]). Stated otherwise, the specifically targeted criminal assault perpetrated upon plaintiff by the companion of a visitor he knew—a visitor to whom he had granted free entrée to the building for the past year—constituted an unforeseeable, intervening force that severed any causal nexus between Esplanade’s alleged negligence and plaintiffs injuries, since it is most unlikely that reasonable security measures would have prevented an attack of this kind (see Cynthia B. v 3156 Hull Ave. Equities, Inc., 38 AD3d 360 [2007]; Buckeridge v Broadie, 5 AD3d 298, 300 [2004]; Cerda v 2962 Decatur Ave. Owners Corp., 306 AD2d 169 [2003]; Rivera v New York City Hous. Auth., 239 AD2d 114 [1997]).
*493 Seeking to avoid the effect of the above-cited case law rejecting claims against landlords based on specifically targeted assaults, plaintiff asserts that the record here raises an issue of fact as to whether Mulligan went to plaintiff’s apartment intending to attack him. This suggestion finds no support in the record, in which all of the evidence indicates that the physical conflict between the two men began immediately upon Mulligan’s entry into the apartment.* However, even if Mulligan had not intended to attack plaintiff from the outset, this would only undercut plaintiffs claim against Esplanade. After all, if Mulligan did not harbor hostile intent against plaintiff when he arrived at the building, it is not clear why plaintiff would have refused to allow him to proceed with Smith to the apartment had the visitors entered through the lobby and been properly announced. In this regard, plaintiff testified that he did not know Mulligan, and had never even seen him, before the day of the attack. Further, if Smith and Mulligan entered the building with innocent intent, the security guard—who presumably knew Smith from her frequent visits to plaintiffs apartment—could not be expected to suspect that any foul play was in the offing.
Plaintiffs reliance on two earlier cases in which we denied landlords summary judgment is entirely misplaced. In Madera v New York City Hous. Auth. (264 AD2d 579 [1999]), we held that the landlord was not entitled to summary judgment where the plaintiff had been the victim of a push-in robbery and assault by “persons unknown” (id. at 579), and an issue of fact existed as to whether an “intervening cause” (id. at 580)—the alleged opening of the apartment door by the plaintiffs father—severed the causal connection between the landlord’s alleged negligence and the assault. In this case, by contrast, the assault was perpetrated by a man who accompanied plaintiff’s former girlfriend into the building, and there is no question that plaintiff knowingly opened his apartment door to the latter. Still further afield is Mason v U.E.S.S. Leasing Corp. (274 AD2d 79 [2000], affd 96 NY2d 875 [2001]), in which we held that the landlord and security contractor were not entitled to summary judgment dismissing a claim based on an attack perpetrated by a man who had a known history of violence on the property. In affirming our Mason decision, the Court of Appeals stated: “Here, questions of fact remain as to whether defendants *494 negligently failed to exclude Toole [the assailant]. The record reveals that Toole, who had relatives residing in the complex, had been involved in several criminal acts in the complex, including robbery, attempted rape and the beating of a security guard; that he had been arrested on the premises; and that defendants kept an arrest photo of him. We cannot conclude as a matter of law that Toole’s involvement in criminal activity on the premises was not a significant foreseeable possibility” (96 NY2d at 878). In this case, unlike in Mason, there is no evidence that Esplanade or its security staff had any reason to be suspicious of either individual involved in the incident (Smith, a frequent visitor whom plaintiff had welcomed to the building many times, and Mulligan, her companion).
In sum, under the precedents of this Court, it is well settled that a targeted attack on a resident of an apartment building does not give rise to liability on the part of the landlord for a failure to provide security. Plainly, the targeted attack in this case—evidently involving the settling of a score over an abortive romance—calls for the application of this rule.
Finally, since the complaint is being dismissed as against Esplanade, we also dismiss Esplanade’s cross claim against Securitas. Concur—Friedman, J.E, Sweeny, Nardelli and Freedman, JJ. [Prior Case History: 2009 NY Slip Op 31743(U).]

 Plaintiff testified that “as soon as” Smith came into the apartment, Mulligan “ran in,” after which the two men “started arguing . . . [and] before I knew it, he put his hands on me and we started fighting” in the doorway. Moreover, that Mulligan kept himself out of sight while plaintiff looked at Smith through the peephole strongly indicates that he harbored intent to ambush plaintiff when he opened the door.