[677 NYS2d 318]

KERRY WILLIAMS, Respondent, v CITIBANK, N. A., Appellant.

First Department, September 3, 1998

**APPEARANCES OF COUNSEL**

*Brian Brown* of counsel, New York City (*Dienst & Serrins, L. L. P.,* attorneys), for appellant.

*Alexander J. Wulwick* of counsel, New York City (*Raskin & Kremins, L. L. P.,* attorneys), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

In this personal injury action based on a failure to provide adequate security to a customer at one of its automatic teller machine (ATM) facilities, Citibank, N. A. appeals from the denial of its motion for summary judgment dismissing the complaint.

Plaintiff alleges that on April 14, 1993, at approximately 8:00 P.M., he was criminally assaulted by an unknown assailant inside the vestibule of an ATM facility at one of Citibank's branches located at 1430 Broadway, near 41st Street, in New York City. While plaintiff did not have a Citibank card to gain access to the locked ATM area, he allegedly used another ATM card to gain entry to the vestibule. He would have had to go through another door to enter the area where the ATMs were located. According to plaintiff, before he ever entered the ATM area and while still in the vestibule, he was assaulted by an unidentified assailant. He had not made any cash withdrawal.

Plaintiff, who was unconscious for several months as a result of the assault, is unable to recall the particulars of the incident. He does not know whether he was with anyone at the time, whether anyone else was in the ATM vestibule before he entered or how his assailant entered the premises. Nothing was taken from him, although he had $500 on his person. The police classified the incident as an assault, not a robbery.

In opposing Citibank's motion, plaintiff failed to submit any evidence whatsoever showing prior criminal activity at this particular ATM facility or in the immediate area. Instead, he asserted that "ATMs attract criminal activity and this particular area had an extremely high crime [rate]." There is no factual support for the allegation. On the other hand, it is undisputed, based on the deposition testimony of Citibank personnel and Citibank records, that there were no prior similar incidents at this particular ATM facility and that Citibank had fully complied with Administrative Code of the City of New York § 10-160 with respect to the security requirements at an ATM. It had equipped the entry doors with a locking device that permitted ingress only by use of an ATM card; the lock was working properly; there was adequate lighting and at least one exterior wall of untinted glass to provide an unob-

structed view of the ATMs; video surveillance cameras, fully operational, were in place, as well as a free telephone service that automatically connects the caller to a customer-service person.

In denying Citibank's motion, the IAS Court found that "[t]he evidence that the ATM was located in a 'high crime' area raises issues of fact as to whether some minimal security measures (greater than camera surveillance) were required." Since plaintiff failed to offer any evidence that the sudden, unexpected, intentional criminal assault committed by a third party against him was foreseeable, the motion to dismiss should have been granted.

An owner or possessor of land has a common-law duty to maintain the public areas of the property in a reasonably safe condition for those who use it. (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519; *Basso v Miller*, 40 NY2d 233, 241; *see*, Restatement [Second] of Torts §§ 359-360.) This duty includes the obligation to maintain minimal security precautions to protect users of the premises against injury caused by the reasonably foreseeable criminal acts of third persons. (*Miller v State of New York*, 62 NY2d 506, 513; *Nallan v Helmsley-Spear, Inc.*, *supra*, at 519.)

Since, however, the owner or possessor is not an insurer of the safety of those who use the premises (*supra*; *Iannelli v Powers*, 114 AD2d 157, 161, *lv denied* 68 NY2d 604), he cannot, even in the background of a history of crime committed on the premises, be held to a duty to take protective measures unless it is shown that he knows or, from past experience, has reason to know that there is a likelihood of third-party conduct likely to endanger the safety of those using the premises. (*Nallan v Helmsley-Spear, Inc.*, *supra*, at 519; Restatement [Second] of Torts § 344, comment *f*.) It is that knowledge, actual or constructive, that creates the duty to take reasonable precautions for the safety of those lawfully using the premises. Similarly, an ATM owner has a duty to take reasonable precautions to secure its premises if it knows or should know that there is a likelihood of conduct on the part of third persons likely to endanger the safety of those using its facility. (*Dyer v Norstar Bank,* 186 AD2d 1083; *lv denied* 81 NY2d 703; *see, Golombek v Marine Midland Bank,* 193 AD2d 1113.) Without evidentiary proof of notice of prior criminal activity, the owner's duty reasonably to protect those using the premises from such activity never arises. "The question of the scope of an alleged tort-feasor's duty is, in the first instance, a legal issue for the

court to resolve." (*Waters v New York City Hous. Auth.*, 69 NY2d 225, 229.)

Thus, plaintiff was obliged to show that Citibank had notice of prior criminal activity at this particular ATM facility. Unfortunately, he has failed to offer a shred of evidence of any prior criminal activity at the Citibank ATM facility at Broadway and 41st Street. Instead, he offered only a bald, unsupported assertion that the ATM facility was located in a "high crime" area.

Vague, unsubstantiated claims of prior criminal activity are patently insufficient. (*Urena v Hudson Guild*, 213 AD2d 312.) Even evidence of prior criminal activity in the general neighborhood will not satisfy a plaintiff's burden. (*Rozhik v 1600 Ocean Parkway Assocs.*, 208 AD2d 913, *lv denied* 85 NY2d 807; *see, Iannelli v Powers, supra,* 114 AD2d, at 161-162.) Nor does plaintiff's unsupported assertion, that "ATMs attract criminal activity", satisfy his obligation to show that Citibank was on notice of previous criminal activity at this particular facility. This statement has no probative value. As to the attorney's affirmation, which was not even sworn under penalty of perjury but merely "upon information and belief," it is well settled that the affirmation of an attorney who lacks personal knowledge of the facts is of no probative value and thus unavailing on a motion for summary judgment. (*Zuckerman v City of New York*, 49 NY2d 557.)

That a person using an ATM might be subject to robbery is conceivable, but conceivability is not the equivalent of foreseeability. "To hold defendant liable for plaintiff's injury '[would be] to stretch the concept of foreseeability beyond acceptable limits' [citations omitted]." (*Dyer v Norstar Bank,* 186 AD2d 1083, *supra,* quoting *Ventricelli v Kinney Sys. Rent A Car,* 45 NY2d 950, 952.) In *Vaughan v Bank of N. Y.* (230 AD2d 731), the Court held that where there was only one instance of a prior robbery at the bank's night depository in the two-year period before the incident, the risk of robbery was not foreseeable. Thus, the Court held, the bank could not be held liable to its customer, who was assaulted and robbed while making a deposit. The same result was reached in *Golombek v Marine Midland Bank* (193 AD2d 1113, *supra).* There, the Court, in discounting the plaintiff's evidence of two reported crimes prior to the incident in question, a robbery at the night depository 22 months earlier and a robbery at the bank 10 months earlier, stated: "Those two incidents do not give rise to a duty on the Bank's part to anticipate a risk of harm from criminal activity

at the night depository box." (*Supra,* at 1114-1115; *see, Cercone v Norstar Bank [appeal No. 1],* 199 AD2d 987.) Thus, given the absence of any evidence of past criminal activity at the ATM in question, plaintiff has failed to raise a triable issue as to the foreseeability of the criminal assault upon him by an unknown assailant. If this Court were to recognize a duty to protect a bank's customers in such circumstances, banks would be exposed to absolute and virtually limitless liability.

Although, in light of our determination of nonforeseeability and, thus, lack of duty, we need not reach the issue, we are unable to find in this record any evidence that Citibank breached a duty to protect plaintiff from criminal assault. The record clearly establishes that Citibank complied with each and every requirement of Administrative Code § 10-160, which imposes on ATM providers certain minimal security measures at each ATM facility. As noted, Citibank provided a locking device on the entry door permitting ingress only by use of an ATM card; the entry doors were equipped with fire bolts—the facility had at least one exterior wall of untinted glass; video surveillance cameras were in place and the facility was equipped with a telephone in working order with an automatic extension to a Citibank representative. It is difficult to fathom what other minimal security measures the IAS Court had in mind, other than posting a 24-hour-a-day security guard, surely an unreasonable burden. Plaintiff's quibble that of Citibank's four-quadrant camera capacity, only three cameras were functioning at the time of the incident, is persuasively rebutted by evidence that, because of the size and layout of the particular ATM facility, only three cameras were necessary to visualize completely the entire area.

Plaintiff's attempt to create an issue of fact by asserting that the surveillance videotape was never exchanged is disingenuous. While it is true that Citibank has not provided plaintiff with the surveillance videotape, it is not, as plaintiff well knows, in Citibank's possession. It had turned over the original videotape pursuant to the District Attorney's subpoena and did not retain a copy. The videotape has apparently been lost by the District Attorney's office.

Finally, we note that the affidavit of plaintiff's expert is replete with conclusory allegations, devoid of any evidentiary support, and was insufficient to establish an Administrative Code § 10-160 violation.

Accordingly, the order of the Supreme Court, Bronx County (George Friedman, J.), entered October 17, 1997, which, insofar

as appealed from as limited by the briefs, denied defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

ROSENBERGER, WILLIAMS and TOM, JJ., concur.

Order, Supreme Court, Bronx County, entered October 17, 1997, reversed, on the law, without costs or disbursements, and defendant's motion for summary judgment dismissing the complaint granted.