■ ROBERT F. WAYBURN et al., Appellants, v MADISON LAND LIMITED PARTNERSHIP et al., Respondents. [724 NYS2d 34] —Order, Supreme Court, New York County (Harold Tompkins, J.), entered December 17, 1999, which, to the extent appealed from as limited by the briefs, granted the motions of defendants Primary Security Services, Rose Associates and Rosenthal & Herman, P. C., for summary judgment and dismissed the complaint, unanimously modified, on the law, so as to deny summary judgment to defendant Rose Associates, the complaint reinstated against it, and Rose's cross claims against defendant Primary Security Services converted to third-party claims, and otherwise affirmed, without costs.

Between 8:00 P.M. and 8:30 P.M. on April 18, 1995, an unknown assailant armed with a gun assaulted, battered and robbed plaintiff Robert Wayburn and subsequently robbed, assaulted, battered and raped plaintiff E.S. Both attacks occurred in an office suite on the 20th floor of 310 Madison Avenue, an office building in midtown Manhattan.

According to an incident report prepared by defendant Primary Security Services, a man dressed in gray slacks and a white shirt entered the building from its 41st Street entrance, which was open while maintenance workers discarded the trash. Once inside, he asked the security guard for the time, signed the guest register with an illegible signature and wrote down the same suite number as the visitor who had preceded him. The security guard, an employee of defendant Primary Security Services, did not ask the man for identification or the nature of his business.

Plaintiff Robert Wayburn was the last one working in suite 2024, in an office he subleased from defendant Rosenthal & Herman. Mr. Wayburn saw plaintiff E.S., a cleaning service employee, enter the suite with her cleaning cart. She unlocked the door to the suite before entering. Shortly thereafter, Mr. Wayburn observed the assailant in the suite. E.S. had also observed the assailant when she entered the suite. Neither plaintiff observed how the man gained access to the suite.

Mr. Wayburn immediately asked the assailant who he was and why he was in the suite. When the man replied that he was a messenger, Mr. Wayburn told him that the office was closed and directed him to leave. Instead, the man, armed with a gun, assaulted, battered and robbed Mr. Wayburn, and then

robbed, assaulted, battered and raped E.S. Shortly thereafter, the security guard saw the same man who had signed in earlier leave the elevator and walk toward the building's 42nd Street exit. She asked him to sign out but he ignored her and kept walking. She attempted to lock the electronic door to lock him in the building, but he jostled the door open and left the premises.

After the assailant left the suite, Mr. Wayburn and E.S. reported the incident to the maintenance supervisor, the security guard on duty in the lobby and the police. The perpetrator was never caught.

As a result of the injuries they suffered that evening, plaintiffs Wayburn and E.S. brought this negligence action against defendants Rose Associates, the managing agent for the premises, Madison Land Limited Partnership, which owned the land the building was situated on, Madison Plaza Associates, owner of the building at the time of the incident, Primary Security Services and Rosenthal & Herman. Plaintiff Doris McGarty, Mr. Wayburn's wife, has asserted a loss of consortium claim.

After discovery, all defendants moved for and were granted summary judgment. Plaintiffs now appeal that decision.* We modify, so as to reinstate the claim against defendant Rose Associates and Rose's claims against Primary Security Services.

It is axiomatic that a party seeking summary judgment must present sufficient evidence to demonstrate the absence of any material issues of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853). To make out a prima facie case of negligence, a plaintiff must prove that the defendant owed a duty, breached that duty and that the breach proximately caused the plaintiff's injury (*Solomon v City of New York*, 66 NY2d 1026, 1027). The question before us is whether defendants Primary Security Services, Rose Associates and Rosenthal & Herman have demonstrated as a matter of law that there are no issues of fact on those points requiring a trial.

The motion court properly dismissed plaintiffs' direct claim against Primary, since that defendant owed no duty of care to the plaintiffs. Rather, since plaintiffs were not third-party beneficiaries of Primary's security contract, Primary's duty of care was owed solely to Rose (*see, Rudel v National Jewelry Exch.*, 213 AD2d 301).

---

* However, plaintiffs' brief does not challenge the motion court's conclusion that Madison Land Limited Partnership and Madison Plaza Associates were out-of-possession landlords without control of the premises.

The motion court erred, however, when it dismissed the complaint as against Rose Associates (Rose). Its sole basis for granting summary judgment to Rose was its understanding that the defendant was an out-of-possession landlord lacking control of the premises. However, while the building was turned over to a receiver in 1993, the evidence indicates that on April 18, 1995, Rose Associates was managing agent of the building and had control of the premises.

Review of the submitted evidentiary materials reflects that Rose Associates failed to satisfy its burden of showing that it was entitled to judgment as a matter of law. Initially, the existence of its duty under the circumstances is well established. A landlord has a common-law duty to take minimal security precautions to protect tenants and members of the public from the foreseeable criminal acts of third parties (see, *Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 548; *Jacqueline S. v City of New York*, 81 NY2d 288, 292, 293, *rearg denied* 82 NY2d 749). This duty is also applicable to managing agents (see, *King v Resource Prop. Mgt. Corp.*, 245 AD2d 10, 11; *Rudel v National Jewelry Exch. Co.*, 213 AD2d 301, *supra*). While this legal obligation does not require a landlord to become an insurer of a tenant's safety (*Jacqueline S., supra*, at 293), it imposes a minimum level of care on landlords and managing agents who know or have reason to know that there is a likelihood that third parties may endanger the safety of those lawfully on the premises (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519). Moreover, the type of safety measures that building operators and managers are reasonably required to provide is almost always a question of fact for the jury (*id.* at 520, 522).

Plaintiffs' evidence was sufficient to create issues of fact regarding whether Rose complied with its duty to take reasonable security precautions to protect tenants and members of the public from foreseeable criminal acts of third parties.

Rose argues that plaintiffs failed to establish a history of violent criminal activity in the building, and that therefore the attack on plaintiffs was unforeseeable as a matter of law, eliminating any legal duty on its part to take action to protect against such an attack. However, plaintiffs' inability to submit police reports or other documentation of prior violent crimes in the building does not warrant summary dismissal of plaintiffs' claims.

Plaintiffs have submitted evidence indicating that Primary Security Services was aware of crimes having been committed in the building before April 18, 1995, although, despite its normal practice to maintain reports of such incidents, it could

locate no such incident reports. Thus, plaintiffs' failure to offer documentation of prior violent crime does not warrant the automatic conclusion that no such crime occurred.

In addition, Karen Morant, office manager for Rosenthal & Herman, asserted that between 1993 and 1995, her firm, which is one of many tenants in this 21-floor office building, reported a total of six criminal or threatening incidents to building security guards, including two attempts by intruders to pry open the locks on the door on suite 2024; the theft of Ms. Morant's leather coat from the coat closet near the door of the suite; the theft of an attorney's wallet from the conference room near the door of the suite; and two incidents in which strangers in the elevator frightened Rosenthal & Herman employees.

While these incidents were not violent crimes like that to which plaintiffs were subjected, to establish foreseeability plaintiffs do not need to establish that the past crimes in the building were of the exact type to which they were subjected (*Jacqueline S. v City of New York, supra*, at 294). Rather, foreseeability rests on whether the prior criminal activity in the building put the defendant on notice that "there [was] a likelihood of conduct on the part of third persons * * * which [was] likely to endanger the safety of the visitor" (*id.* at 294, quoting *Nallan v Helmsley-Spear, supra*, at 519). Given both Ms. Morant's testimony and the other evidence that there were prior incidents in the building, an issue of fact exists regarding the foreseeability of the incident that occurred.

As to the reasonableness of the security measures themselves, factual issues are created by the affidavit of plaintiffs' security expert, who asserted that criminals commonly target office buildings after regular business hours, and that, in his opinion, the buzz-in procedure combined with the lax sign-in procedure used by guards at 310 Madison Avenue essentially left the building wide open to a well-dressed intruder, so that these practices fell far below acceptable standards of care followed by most security and building management companies. In any event, the mere fact that Rose arranged for the presence of security guards in the lobby does not necessarily establish the fulfillment of its duty as a matter of law. This is particularly true in view of the showing that despite its adoption of written procedures to be followed by these guards, such as requiring after-hours visitors to show identification, it was aware that these procedures were generally ignored (*cf., Wyatt v State of New York*, 176 AD2d 574, 576).

Viewing the evidence as a whole, this Court cannot determine as a matter of law the question of whether Rose exceeded the

required duty of care to tenants and visitors on the premises, as it claimed, and if so, whether plaintiffs were placed in a more vulnerable position than they would have been in had defendants taken no such action (*see, Nallan, supra*).

Finally, while defendant Rosenthal & Herman, the law firm leasing the suite that sublet space to Mr. Wayburn, also owed a duty to its subtenants and guests to undertake minimal security measures, the evidence offered by plaintiffs is insufficient to support a claim that the firm violated that duty. Although plaintiffs could not say with certainty how their assailant gained entry to the suite, plaintiff E.S. testified that she unlocked the suite door with her key when she entered and Mr. Wayburn testified that after the attack, he returned with the police to investigate the suite and found both the front and back door of the suite locked. Nothing in the evidence they have submitted permits an inference that Rosenthal & Herman or any of its agents negligently permitted the doors of the suite to be left unlocked.

Although plaintiffs' direct claims against defendant Primary have been dismissed, Rose Associates may still maintain its claims against Primary for indemnification and contribution; accordingly Rose's cross claims are deemed converted to third-party claims. Concur—Nardelli, J. P., Ellerin, Saxe and Friedman, JJ.