■ MICHAEL RODRIGUEZ et al., Appellants, v 1201 REALTY LLC et al., Respondents. [781 NYS2d 328]—

Order, Supreme Court, Bronx County (Janice L. Bowman, J.), entered July 26, 2002, which granted the motion by defendants 1201 Realty LLC and 455 Equities LLC for summary judgment dismissing the second cause of action against them, and further granted the cross motion by defendant Bronx Lebanon Hospital Center for summary judgment dismissing the complaint against it, modified, on the law, the cross motion of Bronx Lebanon Hospital denied, the complaint reinstated against the defendant, and otherwise affirmed, without costs or disbursements.

The 15-month-old infant plaintiff was brought to a hospital emergency room and, while waiting for treatment, stood next to his mother in the crowded waiting area. At the same time, a five-year-old child and his siblings were running around while their mother was with another sibling receiving treatment. The five year old suddenly pushed the infant plaintiff, who fell and fractured his elbow. The primary issue on appeal is whether the hospital can be held liable to the infant plaintiff for this injury.

Plaintiff mother testified that when she and her infant arrived at the hospital, they were directed to the triage area of the emergency room, which she described as "many rooms around with curtains. Then there were beds that you have, you are able

to close so that the children don't fall out. And then in the center, there was a desk with many nurses on [*sic*] it." After a period of time, plaintiffs were taken to a small room with a chair, a desk and an examining table, where a nurse took the infant's vital signs. They were then directed back to the open central area, which plaintiff testified was "not like a waiting area, doesn't have chairs or anything," where plaintiffs waited for medical attention. While they were waiting, another mother arrived with six children. When one of these children, accompanied by her mother, was taken to a cubicle, the other five children, left unsupervised, were "horseplaying, . . . running around and climbing on the beds." It is undisputed that the triage nurses, more than once, instructed the children to stop running. Nevertheless, one of the children, approximately five years old, ultimately ran by plaintiffs and pushed the infant plaintiff, who fell down and broke his elbow.

A hospital has a duty to protect its patients from injury (*see N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 252-253 [2002]; *Freeman v St. Clare's Hosp. & Health Ctr.*, 156 AD2d 300 [1989]). Concomitantly, an owner or possessor of property has a duty to maintain the premises in a reasonably safe condition for those who are lawfully present (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519 [1980]; *Williams v Citibank*, 247 AD2d 49, 51 [1998], *lv denied* 92 NY2d 815 [1998]).

While the dissent recognizes that this case involves the hospital's alleged breach of duty in this regard, it argues that the hospital does not stand in loco parentis to the infant plaintiff. That is clearly not the theory on which liability is sought to be asserted against the hospital. One acting in loco parentis has the duty of "exercis[ing] such care of [its charges] as a parent of ordinary prudence would observe in comparable circumstances" (*Watkins Glen Cent. School Dist. v National Union Fire Ins. Co.*, 286 AD2d 48, 54 [2001], quoting *Mirand v City of New York*, 84 NY2d 44, 49 [1994]), and there is no claim in this case that the hospital was under such a duty.

Thus, to be entitled to summary judgment, the hospital was required to establish that it maintained the area in which the accident occurred in a reasonably safe condition (*see Westbrook v WR Activities-Cabrera Mkts.*, 5 AD3d 69, 71 [2004]). It has failed to meet this burden. Nor could the hospital do so in light of the undisputed evidence that the nurses were aware of the presence of unruly children, but neither called security nor took any other measures to keep them under control or insulate the infant plaintiff from a physical encounter with them. Merely warning the unruly children to behave was clearly insufficient.

The dissent, quoting *Mochen v State of New York* (57 AD2d 719, 720 [1977]), asserts that "no reasonable provision of additional supervision would have prevented the occurrence." This conclusion not only usurps the jury's function but also ignores the fact that the accident might arguably have been averted if the nurses had called security or if seating had been made available for patients awaiting emergency care so that the infant plaintiff could have been out of harm's way.

In asserting that plaintiffs made no argument as to inadequate seating and that they failed to raise an issue of fact regarding that theory, the dissent ignores the argument of plaintiffs' attorney, supported by plaintiff mother's deposition testimony, that the mother was forced to stand in the emergency room holding the infant plaintiff until she got tired and had to put the child down. In our view, this argument sufficiently raised the issue. Nor, in our view, is expert evidence required, as argued by the dissent, to show the inadequacy of the seating arrangements for those awaiting emergency treatment. This is a matter well within the ken of the average person to appreciate (*see De Long v County of Erie*, 60 NY2d 296, 307 [1983]). In any event, the complaint alleges lack of adequate supervision, which is broad enough to encompass the claim of insufficient seating in the emergency room, and plaintiffs can rely on the undisputed evidence that there was no seating available. Moreover, in opposing the motion for summary judgment, plaintiffs argued that the hospital "should have segregated [them] from the chaos."

We are all in agreement that the motion court properly granted summary judgment dismissing the cause of action against the landlord defendants based on the elbow fracture the infant plaintiff sustained at the hospital. Although the alleged negligence of those defendants in maintaining a ceiling in proper repair is what caused plaintiffs' visit to the hospital, the intervening rowdiness of the children at the hospital was not a foreseeable risk of that alleged negligence (*see Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315-316 [1980]). Concur—Tom, J.P., Saxe, Sullivan and Lerner, JJ.

Friedman, J., dissents in part in a memorandum as follows: The issue that divides us on this appeal is whether a hospital can be held liable for an injury a small child sustained as a result of being pushed by an unruly, somewhat older small child, unattended by his mother, who ignored the hospital staff's prior entreaties to settle down. Since I fail to see, on this record, what more the hospital reasonably could have done to avert this incident, I believe that we should affirm the grant of summary judgment to the hospital.

In greater detail, the facts of this case, as alleged by plaintiffs, are as follows. On July 6, 1999, plaintiff mother Carmen Lantigua brought her 15-month-old son, infant plaintiff Michael Rodriguez, to defendant hospital's emergency room for treatment of a head injury he had received at home. Because the emergency room was busy, plaintiffs had to stay in a waiting room until a physician became available. At all times, nurses were present in this waiting room. Although Ms. Lantigua initially carried Michael, she eventually became tired and placed him on the floor by her side, where he stood. While she and her son were waiting, Ms. Lantigua observed five or six children, older than Michael, running around the waiting room in a boisterous manner. According to Ms. Lantigua's deposition testimony, the nurses in the waiting room were aware of the behavior of these children, had admonished them, and were attempting to locate their mother, who apparently was with a child receiving treatment. As Ms. Lantigua further testified, however, before the children were brought under control, one of them, a boy who appeared to be about five years old, pushed Michael, who fell down and fractured his elbow.

Even when this record is viewed in the light most favorable to plaintiffs, I cannot see what additional steps the hospital reasonably could have been expected to take to prevent the infant plaintiff's injury in the waiting room. In this regard, I observe that the hospital, while clearly having a general duty to maintain reasonably safe conditions in the waiting room, did not stand in loco parentis to the infant plaintiff, who was in his mother's custody at the time of the incident (*see Bullis v Schuyler Hgts.*, 276 App Div 630, 631 [1950], *affd* 302 NY 722 [1951]). Thus, to sustain the cause of action against the hospital would essentially transform such an institution into an insurer of the safety of all persons on its premises. Such a holding—which could not logically be confined to the waiting rooms of large institutions like hospitals, and would apply to the waiting room of any neighborhood pediatrician—is contrary to the established law of this state (*see N. X. v Cabrini Med. Ctr.*, 97 NY2d 247, 253 [2002], citing *Killeen v State of New York*, 66 NY2d 850, 851 [1985]). I therefore respectfully dissent from the majority's determination insofar as it modifies the order of the IAS court to deny the hospital's motion for summary judgment dismissing the complaint as against it.[1]

The only injury for which the hospital is being sued is Michael's elbow fracture. Plaintiffs do not allege any medical

---

1. I concur with the majority's decision insofar as it affirms the grant of partial summary judgment in favor of the landlord defendants.

malpractice by the hospital. Rather, the claim against the hospital is based on its alleged ordinary negligence in failing to prevent Michael from being knocked down by a five-year-old child in the waiting room, as alleged by plaintiff mother. Theoretically, this accident could have been prevented in one of two ways. Specifically, Michael could have been moved out of the way of the older children or, alternatively, the boisterous conduct of those children in the waiting room could have been stopped. Upon analysis of the facts as alleged by plaintiffs themselves, however, it is evident that the hospital cannot be held liable for failing to do either of these things.

First, with regard to the failure to move Michael out of the older children's way, I again note that Michael was in his mother's custody, not the hospital's, at the time of the incident. To reiterate, a landowner does not stand in loco parentis to a child in the custody of its parent within the landowner's premises (see Bullis v Schuyler Hgts., supra). Thus, if prudence required that Michael be moved to avoid a collision between him and the older child running around in the waiting room, it was his mother's responsibility to move him, rather than that of the hospital. While General Obligations Law § 3-111 forbids the imputation of parental negligence to a child, that statutory principle ''does not result in transferring a parent's negligence to a landlord, nor can it result in increasing the landlord's primary legal duty'' (Bullis, 276 App Div at 632, citing former Domestic Relations Law § 73). Stated otherwise, to the extent Michael's mother may have been negligent in allowing him to stand on his own in the vicinity of a boisterous older child, any such parental negligence does not serve to transfer the mother's parental duties to the hospital as owner of the premises. Thus, since Michael was under his mother's care and protection in the waiting room, the hospital, as owner of the premises, owed Michael only a duty to maintain that room in a reasonably safe condition.

The question that emerges from the foregoing is whether a triable issue exists as to whether the hospital fulfilled its duty to exercise reasonable care to maintain safe conditions in the waiting room. While the hospital did have a duty to make reasonable efforts to maintain order in the waiting room, it does not follow from the existence of such a duty that the hospital was required to guarantee that one young child would never push another young child in the waiting room. Thus, the fact that such an accident occurred does not necessarily mean that the hospital failed to use due care, or even that a triable issue exists in that regard. ''Negligence cannot be presumed from the

mere happening of an accident" (*Mochen v State of New York*, 57 AD2d 719, 720 [1977]). Since the hospital's duty of care did not make it an insurer of anyone's safety (*see N.X. v Cabrini Med. Ctr., supra*), the record must be read with a view to discerning whether it could support a finding that this accident would have been averted by the taking of some additional reasonable measure, within the hospital's power as owner of the premises (*see Mochen v State of New York, supra* at 720 [claim was properly dismissed where "no reasonable provision of additional supervision would have prevented the occurrence"]).

Plaintiff mother's own account of the accident establishes, as a matter of law, that the hospital took all measures reasonably available to it to avoid the danger of the occurrence of such an accident. As Ms. Lantigua testified, the waiting room was superintended by more than one nurse at all times. When these nurses observed the children running around in a boisterous manner, they admonished the children to settle down, and, when the horseplay continued, they sought to locate the children's mother.[2] There is nothing more the hospital reasonably, and lawfully, could have done. The children were too young to be ejected from the hospital; for example, the boy who knocked Michael down appeared to be only five years old. An attempt to physically restrain children of such tender years might well have exposed the hospital to liability; thus, a security guard would not have added any additional measure of protection against the risk of concern to us here. While the majority suggests that Michael "should have [been] segregated," a separate waiting room for children only would have moved the problem to a different room. Moreover, it certainly would not be reasonable to require the hospital to maintain a separate waiting room for each age group of children. Since the hospital simply was not in a position to restrain the conduct of the children who caused Michael's accident, I conclude that the hospital is entitled to summary judgment dismissing the complaint as against it (*see Davies v Incorporated Vil. of E. Rockaway*, 272 AD2d 503, 504 [2000] [parents could not be held liable for son's conduct where unrebutted evidence established that parents "were not in a position to restrain their son's conduct"]).

As to the majority's assertion regarding seating, I note that plaintiffs never argued, either in their opposition to the sum-

---

**2.** While the majority quotes plaintiffs' counsel's characterization of the waiting room as "chao[tic]," it seems to me that the conditions in this waiting room, like conditions in emergency rooms throughout this city, would be more accurately described as crowded, or "busy," the word Michael's mother used at her deposition.

mary judgment motions or in their appellate briefs, that liability could be imposed on the hospital based on a failure to provide seating. This failing is not cured by the complaint's allegation of a "lack of adequate supervision," which, contrary to the majority's unsupported assertion, is not so "broad" as to put a defendant on notice of an issue concerning provision of sufficient seating. While the majority asserts that I have "ignore[d]" certain references by plaintiffs' counsel to the testimony of Michael's mother that she had to stand while waiting, and that she could not hold Michael all that time, the fact remains that nowhere in the affirmation opposing summary judgment, or in the briefs on this appeal, has plaintiffs' counsel argued that a viable cause of action against the hospital may be predicated on an alleged seating insufficiency. Thus, the majority has essentially transformed plaintiffs' claim for inadequate supervision into a claim for inadequate seating, which is something altogether different. I am not prepared to salvage plaintiffs' claim by recasting its theory of liability as one never asserted or articulated by counsel.

In any event, we deal here with a motion for summary judgment, and not one addressed to the sufficiency of a pleading. If plaintiffs intended to try the case on an "insufficient seating" theory, it was incumbent on them to raise a triable issue of fact in that regard in their opposition to the summary judgment motion. This they have not done. In particular, plaintiffs have not come forward with any expert evidence to establish, under prevailing professional standards of hospital design (not, in my view, a field within the ken of a layperson), the adequacy of seating in the area where the incident occurred (which, it appears from Ms. Lantigua's deposition, was actually a triage area), or whether seating was required at all in that area. More fundamentally, any supposed absence of seating could not be deemed to have proximately caused this accident, since children have a proclivity to move around regardless of the availability of seating. The notion on which the majority's "seating" theory of the case is premised—that, but for the supposed lack of seating, either or both Michael and the five year old would have quietly sat on chairs for the duration—is entirely speculative, if not wholly farfetched. Thus, even if the "seating" theory were properly before us, the hospital would still be entitled to summary judgment.

In essence, the majority's decision extends a hospital's duty to provide reasonably safe premises for its patients to the threshold of strict liability for the adverse results of all human interactions that transpire within the hospital building, includ-

ing encounters between small children in a waiting room. While the majority laments the hospital's failure to "control" the "unruly children," or to "insulate the infant plaintiff from a physical encounter with them," what is conspicuously absent from these arguments is a suggestion of any *reasonable* steps the hospital failed to take to accomplish these goals. Again, the person who pushed the infant plaintiff was not an unruly adult, who might readily have been dealt with by a security guard, but an irresponsible five-year-old child, who could neither be ejected from the building nor physically restrained for an extended period of time. On this record, I do not see how the hospital reasonably could have been expected to do more to bring the unruly five year old under control than to admonish him and seek his mother. Since the record shows that the hospital took precisely these actions, I would affirm the grant of summary judgment dismissing the complaint as against the hospital.

