■ RAVEENDRAN NARAYANAN, Respondent, v CITY OF NEW YORK, Defendant, and FJC SECURITY SERVICES, INC., Appellant. [801 NYS2d 45]—

In an action to recover damages for personal injuries, the defendant FJC Security Services, Inc., appeals, as limited by its brief, from so much of an order of the Supreme Court, Kings County (Jacobson, J.), dated June 2, 2003, as denied its motion for summary judgment dismissing the complaint insofar as asserted against it.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the motion is granted, and the complaint is dismissed in its entirety.

At approximately 1:00 A.M. on September 3, 1998 the plaintiff was sleeping in a dormitory room on the second floor of a homeless shelter in Brooklyn which was operated by the City of New York when he allegedly was assaulted by three unidentified men. At the time, the appellant was retained by the City to provide security services at the shelter pursuant to a contractual agreement. It was undisputed that the policy at the shelter was to keep the dormitory room closed for privacy reasons and that the door was in fact closed at the time of the assault. The plaintiff acknowledged in his deposition testimony that at no

time during the assault did he attempt to escape or call out for help. He estimated the size of the room as approximately 35 feet by 20 feet. The appellant's witness testified that it was the appellant's policy to have two guards patrolling the hallway outside the dormitory room at all times. While the plaintiff contends that the assault was proximately caused by the appellant's failure to provide adequate security services for the shelter, he did not claim that his assailants were intruders or that the appellant's negligence consisted of its failure to prevent intruders from gaining access to the shelter.

Assuming that the plaintiff was an intended third-party beneficiary of the contract between the appellant and the City, under these circumstances, it cannot be concluded that the appellant could have reasonably expected, anticipated, or prevented the attack upon the plaintiff (*see Moberg v New York Yankees*, 218 AD2d 731, 732 [1995]). Accordingly, the appellant's motion should have been granted.

In view of the foregoing, we need not reach the appellant's remaining contentions. Schmidt, J.P., Adams and Santucci, JJ., concur.

Skelos, J., dissents and votes to affirm the order, with the following memorandum: There are material issues of fact and outstanding discovery upon which grounds the Supreme Court properly denied the appellant's motion for summary judgment. Accordingly, I dissent.

At approximately 1:00 A.M. on September 3, 1998 the plaintiff was sleeping in a dormitory room on the second floor of a homeless shelter in Brooklyn which was operated by the City of New York, when he allegedly was assaulted by three unidentified men. The plaintiff commenced this action to recover damages for personal injuries against the City and FJC Security Services, Inc. (hereinafter FJC). FJC moved for summary judgment and submitted, inter alia, the transcripts of the examinations before trial of the plaintiff, Blanche McIver, the director of the shelter, Darren Ford, a security guard employed by FJC, the incident report prepared by McIver, and the contract for unarmed security services between the City and FJC.

The plaintiff testified that his assailants awoke him and claimed that the bed to which the plaintiff was assigned belonged to them. The plaintiff protested. The men searched his pockets, bedsheets, and pillow. The plaintiff asked them what they wanted and one of the men demanded his papers. Approximately two minutes later the three men attacked the plaintiff. During the attack, which lasted approximately four to five minutes, the plaintiff was held by the neck, throat, and

nose as the men continued to search his pockets. The men then hit the plaintiff with their fists in the chest, nose, and mouth. The room was dark and the plaintiff did not see where the men went after the assault. The plaintiff contends that he sat on his bed crying for approximately five minutes before security personnel came into the room. He contended that he was bleeding from the nose and mouth. The police arrived at the shelter and conducted an investigation, but the assailants were never identified. The plaintiff was eventually taken by the Emergency Medical Service (hereinafter EMS) to Woodhull Hospital.

Ford testified at his deposition that there were two security guards assigned to the second floor on which the plaintiff's dormitory room was located. The guards were constantly patrolling the halls, dormitories, bathrooms, and stairwells. Ford, who was not assigned to the plaintiff's floor on the night of the incident, responded to a radio call for assistance. Contrary to the plaintiff's testimony, Ford testified that the plaintiff and one of the other guards told him that after the attack the plaintiff came out into the hallway and called for security. Ford also testified that he did not notice any injuries to the plaintiff and that EMS was not called. Although Ford was required to write a report of the incident and prepare a logbook entry, and claimed that he did so, FJC was unable to produce the logbook or incident report. Confirming the plaintiff's testimony, the incident report prepared by an employee of the New York City Division of Homeless Services stated that the client was found "sitting in bed bleeding from [the] mouth and face," described the plaintiff's injury as "Serious, but not life threatening" and reported that the plaintiff was taken to Woodhull Hospital by EMS.

Pursuant to its contract with the City, FJC was required to maintain order "within and around perimeter of each facility," protect "staff and clients against injury" and "implement additional tasks . . . relevant to protect the premises and clients." Although FJC contends that it was the policy at the shelter to keep the dormitory rooms closed for privacy reasons and that the door was in fact closed at the time of the assault, FJC did not establish that this policy prohibited its security guards from entering the dormitory rooms for security purposes. To the contrary, Ford testified that the guards routinely inspected the dormitories. In fact, the contract between the City and FJC provided: "A patrolling Guard *shall be responsible* for all areas of the assigned location including . . . *dormitories*" (emphasis added). Furthermore, the applicable regulations, while recognizing the need for maintaining a degree of privacy, contemplate

access to the dormitory rooms by security personnel: "Doors in residents' sleeping rooms may be secured by the resident provided such doors can be unlocked from the outside and keys are carried by attendants at all times" (18 NYCRR 491.10 [i] [2]).

The provisions of the contract between the City and FJC unequivocally express an intent to confer a direct benefit on the homeless clients, such as the plaintiff, in residence at the City shelter, to protect them from physical injury. Accordingly, the plaintiff may recover as a third-party beneficiary for injuries sustained by reason of FJC's failure to perform duties imposed by the contract (*see DelGrande v County of Westchester*, 293 AD2d 704, 705 [2002]; *Flynn v Niagara Univ.*, 198 AD2d 262 [1993]; *see also Fontana v Falides Assoc.*, 202 AD2d 631 [1994]; *cf. Durham v Beaufort*, 300 AD2d 435 [2002]; *O'Gorman v Gold Shield Sec. & Investigation*, 221 AD2d 325, 326 [1995]), provided the evidence is sufficient to establish that harm to the plaintiff was a reasonably foreseeable consequence of the breach of contract (*see DelGrande v County of Westchester, supra; Flynn v Niagara Univ., supra; see also Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 518-520 [1980]).

Here, in light of the conflicting evidence submitted by FJC in support of its motion for summary judgment, including the deposition transcripts and the incident report, FJC failed to meet its burden to establish its prima facie entitlement to summary judgment (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). Questions of fact exist as to whether FJC was negligent in failing to timely and appropriately respond to the assault upon the plaintiff (*see Kavanagh v Vigario*, 309 AD2d 640 [2003]; *Merice v County of Westchester*, 305 AD2d 383, 384 [2003]; *Flynn v Niagara Univ., supra*). This is particularly so in light of FJC's failure to produce non-hearsay evidence establishing that the security guards assigned to the second floor were properly stationed on the floor and, notwithstanding having been properly stationed, that they could not have heard the commotion in the dormitory so as to timely respond to prevent, or reduce the severity of, the injury to the plaintiff (*see Mirand v City of New York*, 84 NY2d 44, 49-50 [1994]; *Thomas v Board of Educ. of Kingston City Consol. School Dist.*, 291 AD2d 710 [2002]; *Nelson v Sachem Cent. School Dist.*, 245 AD2d 434 [1997]; *Firpi v New York City Hous. Auth.*, 175 AD2d 858 [1991]).

Moreover, FJC failed to establish that the assault on the plaintiff was not a reasonably foreseeable event against which it could have afforded the plaintiff protection (*see Nallan v*

*Helmsley-Spear, Inc., supra*). To the contrary, the potential for assaults or fights between clients was expressly recognized by FJC and the City as evidenced by the pre-printed language (e.g., "Fights between clients/staff/visitors where supervisory staff diffuses situation/no arrest") included on the incident report submitted in support of the motion for summary judgment. In addition, its contract with the City required FJC to report criminal or unlawful acts, including assaults. Nevertheless, at his examination before trial the plaintiff was improperly precluded from presenting testimony which might demonstrate that FJC had notice of prior assaults or fights between clients and that there was a need for more vigilant supervision. Moreover, before the making of the motion, FJC had not complied with its obligation to provide discovery of reports of prior incidents. Accordingly, the Supreme Court properly denied the motion for summary judgment on the additional ground that there were facts essential to the opposition which were exclusively within the possession of the movant, and correctly directed FJC to comply with the outstanding discovery requests (*see* CPLR 3212 [f]; *Magee v County of Suffolk*, 14 AD3d 664 [2005]; *see also Wayburn v Madison Land Ltd.*, 282 AD2d 301, 303-304 [2001]).