■ Maria T., Respondent, v New York Holding Company Associates et al., Appellants. [862 NYS2d 16]—

Order, Supreme Court, Bronx County (Yvonne Gonzalez, J.), entered March 16, 2007, which denied defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in defendants' favor dismissing the complaint.

Plaintiff was a tenant in a building located at 584 Academy Street in Manhattan, owned by defendant New York Holding Company Associates and managed by defendant Metro Management & Development, Inc. In the early afternoon of February 26, 2002, plaintiff entered the building through the lone entrance available to the tenants. A man whom plaintiff did not recognize entered the building immediately after her. The man walked ahead of plaintiff up a staircase, which plaintiff was using to reach her unit on the second floor. As plaintiff opened the door to her apartment, the man, who had continued up the staircase when plaintiff walked from the staircase to her unit, ran down the staircase and pushed plaintiff into the apartment. The man then sexually assaulted plaintiff at gunpoint.

Plaintiff commenced this action to recover damages for personal injuries, claiming that defendants failed to provide adequate security for the building. Specifically, plaintiff's theory of liability is that defendants failed to maintain a working lock on the door to the tenants' entrance, which failure allowed the assailant to gain entry to the building and assault plaintiff.

Defendants jointly moved for summary judgment dismissing the complaint on the ground that the assault was not foreseeable, arguing that, although there was drug activity in the surrounding neighborhood, there was no history of criminal activity in the building. In opposition, plaintiff submitted evidence demonstrating that, in the $4^{1}/_{2}$ years prior to the assault, several incidents occurred in or near the building to which the police responded. Plaintiff also submitted the affidavit of an expert in the field of premises security who averred, among other things, that the building was in a high crime area and that the assault on plaintiff was foreseeable. In reply, defendants argued that the prior incidents relied upon by plaintiff were not similar to the assault and therefore did not demonstrate that the assault was foreseeable. Supreme Court, finding a triable issue of fact to exist with respect to the issue of foreseeability, denied the motion.

Building owners and managing agents have a common-law duty to take minimal security precautions to protect tenants from the foreseeable criminal acts of third parties (*see Jacqueline S. v City of New York*, 81 NY2d 288 [1993]; *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507 [1980]; *Wayburn v Madison Land Ltd. Partnership*, 282 AD2d 301 [2001]). As Justice Ritter stated for the Second Department in addressing the issue of whether a crime giving rise to a lawsuit was foreseeable to owners and operators of the building in which the crime occurred: "[T]here is no requirement 'that the past experience relied on to establish foreseeability be of criminal activity at the exact location where plaintiff was harmed or that it be of the same type of criminal conduct to which plaintiff was subjected', or that 'the operative proof must be limited to crimes actually occurring in the specific building where the attack took place' (*Jacqueline S. v City of New York, supra*, at 294). However, this does not mean that the criminal activity relied upon by the plaintiffs to support their claim of foreseeability need not be relevant to predicting the crime in question. . . . Rather, to establish foreseeability, the criminal conduct at issue must be shown to be reasonably predictable based on the prior occurrence of the same or similar criminal activity at a location sufficiently proximate to the subject location" (*Novikova v Greenbriar Own-*

*ers Corp.*, 258 AD2d 149, 152-153 [1999]). Our case law is to the same effect (*see Buckeridge v Broadie*, 5 AD3d 298, 300 [2004]; *see also Wayburn*, 282 AD2d at 303-304; *Brewster v Prince Apts.*, 264 AD2d 611, 614-615 [1999], *lv denied* 94 NY2d 762 [2000]; *Williams v Citibank*, 247 AD2d 49, 51 [1998]; *Todorovich v Columbia Univ.*, 245 AD2d 45, 46 [1997], *lv denied* 92 NY2d 805 [1998]).

Defendants met their initial burden of establishing their entitlement to judgment as a matter of law by making a prima facie showing that the sexual assault committed against plaintiff was not reasonably predictable. In support of their motion, defendants submitted the deposition testimony of three witnesses—plaintiff, an employee of the managing agent and the superintendent of the building. The deposition testimony of these witnesses established nothing more than that, in the words of the employee of the managing agent, there was "a lot of drug and drug-related activity" in the neighborhood. Moreover, with respect to the building itself, each witness testified that he or she was not aware of any criminal activity in the building prior to the assault committed against plaintiff.

In opposition to the motion, plaintiff submitted police reports indicating that the following criminal activities had occurred in or near the building prior to the assault: (1) on July 5, 1997, a young female tenant was sexually harassed by a male tenant; (2) on March 18, 1998, two police officers, while on patrol, observed two individuals in the doorway of the building, one of whom was holding a marijuana cigarette, and, upon searching them, the officers discovered that both individuals possessed crack cocaine; (3) on March 14, 1999, a man walking on Academy Street somewhere in the vicinity of the building was shot in the groin by a woman whom the man did not know and could not identify; (4) on August 8, 1999, a man was punched while exiting the building by four individuals; (5) on October 19, 1999, a female tenant received three sexually explicit prank phone calls from an unknown male; (6) on November 24, 1999, a contractor working at the building found two rifles and ammunition somewhere in or near the building; and (7) on October 13, 2000, a tenant's bedroom window was broken when one or more unidentified individuals threw oranges at the window. Plaintiff also submitted the affidavit of an expert in the field of premises security who averred, among other things, that the building was in a police precinct with high rates of crime, the drug activity in the neighborhood "attract[ed] criminal elements to [the] neighborhood" and the assault on plaintiff was foreseeable.

Plaintiff's evidence was insufficient to raise a triable issue of fact with respect to whether the sexual assault was foreseeable, i.e., reasonably predictable. Of the seven prior instances of criminal activity relied upon by plaintiff, only three involved crimes against the person and none are similar to the sexual assault committed against plaintiff. During the March 18, 1998 incident, police officers observed two individuals standing in the doorway of the building, one of whom was holding a marijuana cigarette; the officers reported that one of the individuals pushed one of the officers when the officers approached the individuals. The March 14, 1999 incident involved a shooting that occurred off the premises on the street somewhere in the vicinity of the building. The August 8, 1999 assault, which occurred approximately two years and seven months prior to the assault committed against plaintiff, involved four individuals punching a man as he exited the building, a markedly different crime than the one to which plaintiff, who was accosted while entering her apartment and sexually assaulted by a lone perpetrator who was a stranger, was subjected. The remaining four instances of prior criminal activity involved the harassment of a tenant by a cotenant, the receipt of prank phone calls by a tenant, the discovery of two rifles and ammunition in or near the building and a misdemeanor entailing minor property damage, none of which are at all similar to the sexual assault committed against plaintiff.

Thus, the sexual assault committed against plaintiff was not reasonably predictable based on the prior criminal activity in or near the building (see Buckeridge, 5 AD3d at 300; Novikova, 258 AD2d at 152-153; see also Todorovich, 245 AD2d at 46-47; cf. De Luna-Cole v Fink, 45 AD3d 440 [2007] [assault of plaintiff in defendants' building was foreseeable since, in the several years preceding the assault, multiple crimes, including assault, armed robbery, burglary and theft, had been committed in the building, and the area in which building was located experienced high rate of crime]; Rivera v 1652 Popham Assoc., LLC, 31 AD3d 297 [2006] [triable issue of fact existed regarding whether rape of plaintiff was foreseeable since, among other things, pervasive drug dealing and frequent other criminal activity occurred in the building that was serious enough to warrant regular police vertical patrols of the building]).

Without trivializing the criminal activity in and around plaintiff's building, it must be acknowledged that, with the exception of the shooting that took place on a street somewhere in the vicinity nearly three years earlier, the criminal activity plaintiff relies upon consists of low-level crimes. When one

considers that plaintiff includes all the criminal activity in and around the building over a period of more than 4$^{1}/_{2}$ years, it also must be acknowledged that the extent of criminal activity plaintiff relies upon is hardly unusual. Justice Ritter made the point well in *Novikova*: "As the endless supply of crime statistics attest, crime is a fact of life and is foreseeable. Criminal activity is more frequent in our urban centers, although there are marked differences between neighborhoods. However, the courts have repeatedly held that ambient neighborhood crime alone is insufficient to establish foreseeability" (258 AD2d at 152-153 [citations omitted]).*

Justice Sullivan, in determining that the assault of a customer of an ATM facility was not foreseeable to the operator of the facility, made the following related observation: "That a person using an ATM might be subject to robbery is conceivable, but conceivability is not the equivalent of foreseeability. To hold defendant liable for plaintiff's injury would be to stretch the concept of foreseeability beyond acceptable limits [and make defendant an insurer of plaintiff's safety]" (*Williams*, 247 AD2d at 52 [internal quotation marks, brackets and citation omitted]). The same holds true here. That a woman entering her apartment in New York City might be subject to a sexual assault is conceivable, but conceivability is not the equivalent of foreseeability. Concur—Saxe, J.P., Nardelli, Catterson and McGuire, JJ.

(June 19, 2008)

---

* Similarly, this Court has repeatedly recognized that, since building owners and managing agents have neither the capacity nor the duty to protect tenants against neighborhood crime, ambient neighborhood crime is insufficient to establish that a particular criminal act was foreseeable, i.e., reasonably predictable (*see Regina v Broadway-Bronx Motel Co.*, 23 AD3d 255 [2005]; *Buckeridge*, 5 AD3d at 300; *Todorovich*, 245 AD2d at 47).