[17 NYS3d 12]

Keyla Virginia Gonzalez, Appellant, v City of New York, Respondent.

First Department, September 22, 2015

**APPEARANCES OF COUNSEL**

*Pollack, Pollack, Isaac & De Cicco, LLP*, New York City (*Brian J. Isaac* and *Michael H. Zhu* of counsel), for appellant.

*Zachary W. Carter, Corporation Counsel*, New York City (*Michael J. Pastor* and *Richard Dearing* of counsel), for respondent.

**OPINION OF THE COURT**

RENWICK, J.

This action arises from the shooting death of Shirley Fontanez by her boyfriend, Police Officer Frederick Maselli, at his home, on July 23, 2007. After the shooting, Maselli killed himself. Fontanez was 16 years old when she began her relationship with Maselli, who was then 38 years old. Fontanez is survived by her infant daughter, Angeshely Sasha Gonzalez, the sole distributee of Fontanez's estate. Plaintiff Keyla Virginia Gonzalez, as administrator of the estate of Fontanez, alleges that numerous complaints were made to the City of New York concerning Maselli's abusive conduct toward Fontanez and Sasha, that the City was negligent in hiring, training, supervising and retaining Maselli, and in failing to take action to remove his firearm, and thereby caused Fontanez's wrongful death. Supreme Court, however, granted the City summary judgment dismissing the action on the ground that any negligence on defendant City's part for failing to discharge a police officer with violent propensities could not have been the proximate cause of Fontanez's death, since at the time of the fatal shooting, Maselli was off duty and was acting outside the scope of his employment. Thus, the dispositive issue that we must resolve is whether the fact that the police officer was off duty when he committed the fatal shooting breaks any connection, as a matter of law, between the fatal injuries and the employer's alleged negligence regarding an employee with

violent propensities. For the reasons explained below, we find that it does not.

This case raises classic issues of duty and proximate cause. Integral to each element is a question of foreseeability. However, the questions of foreseeability are distinct. In determining duty, a court must determine whether the injured party was a foreseeable plaintiff—whether she was within the zone of danger created by defendant's actions (*Palsgraf v Long Is. R.R. Co.*, 248 NY 339 [1928]). A plaintiff must show that defendant's actions constituted a wrong against her, not merely that defendant acted beneath a required standard of care and that plaintiff was injured thereby (*id.*). She must show that a relationship existed by which defendant was legally obliged to protect the interest of plaintiff (*id.* at 342). The existence of a duty is a question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law (*id.*; *see also* Prosser & Keeton, Torts § 37 [5th ed 1984]).

In determining proximate cause, an element of foreseeability is also present—the question then is whether the injury to plaintiff was a foreseeable result of defendant's breach, i.e., what manner of harm is foreseeable? (*See* 3 Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, The Law of Torts § 16.9, at 466-469 [2d ed 1986] [discussing the history of the nexus between breach and foreseeability].) The question of proximate cause is generally a question of fact for a jury.

In this case, the alleged duty owed to plaintiff stems from New York's long recognized tort of negligent hiring and retention (*see Haddock v City of New York*, 75 NY2d 478 [1990]; *Ford v Gildin*, 200 AD2d 224 [1st Dept 1994]; *Detone v Bullit Courier Serv.*, 140 AD2d 278 [1st Dept 1988], *lv denied* 73 NY2d 702 [1988]). This tort applies equally to municipalities and private employers (*see Haddock*, 75 NY2d 478). This theory of employer liability should be distinguished from the established legal doctrine of "respondeat superior," where an employer is held liable for the wrongs or negligence of an employee acting within the scope of the employee's duties or in furtherance of the employer's interests (*see* Restatement [Second] of Agency §§ 219 [1], 228). In contrast, under the theory of negligent hiring and retention, an employer may be liable for the acts of an employee acting outside the scope of his or her employment (*see id.* § 219 [2]; *see also id.* § 213, Comment *d*; Restatement [Second] of Torts § 317).

Thus, in this case, plaintiffs' negligence claims do not depend on whether Maselli acted within the scope of his employment

or whether the City participated in, authorized, or ratified Maselli's tortious conduct. Rather, the alleged breach of duty stems from the claim that during Maselli's employment with the City, the City became aware or should have become aware of problems with Maselli that indicated he was unfit (i.e. possessed violent propensities), that the City failed to take further action such as an investigation, discharge, or reassignment, and that plaintiff's damages were caused by the City's negligent retention, or supervision of Maselli.

The negligent retention or supervision of a police officer, which results in the employee having possession of a dangerous instrumentality, is similar to if not indistinguishable from the tort of entrusting a dangerous instrumentality to another. The duty analysis should be the same.

> "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them" (Restatement [Second] of Torts § 390).

The duty not to entrust a gun to a dangerous or incompetent police officer thus extends to any person injured as a result of the negligent entrustment.

Consistent with this theory of liability, New York courts have held governmental employers liable for placing employees, like police officers who are known to be violent, in positions in which they can harm others (see e.g. Haddock, 75 NY2d at 480; Hall v Smathers, 240 NY 486 [1925]; McCrink v City of New York, 296 NY 99 [1947]). For instance, in McCrink, an off-duty New York City police officer, while intoxicated, shot and killed one citizen and seriously wounded another. In three separate disciplinary proceedings prior to the incident, he was found guilty of intoxication and punished for the offense. However, the City retained the officer in its employ despite the fact that his retention as a police officer who was permitted to carry a revolver at all times posed a potential danger to the public. The Court of Appeals held that this disciplinary record was proof from which a jury might find that the Police Department was fully aware that the officer was not to be trusted to perform

the duties of a police officer and that it could be found negligent for retaining him. Thus, the Court of Appeals held that when the retention of an officer may involve a risk of bodily harm to others, the government has a duty to abate the risk of dangers to others (*McCrink*, 296 NY at 106).

Similarly, in *Wyatt v State of New York* (176 AD2d 574 [1991]), this Court held the State liable for placing a correction officer who was known to be violent in a position in which he could harm others. In 1984, Robinson, an off-duty Department of Correctional Services officer, shot a puppy named "Princess" for barking too loudly (*id.* at 575). When Princess's owner, Marquez, confronted him, Robinson responded, "I going [sic] shoot you too" (*id.*) The police soon arrived, but did not arrest Robinson after he displayed his correction officer's badge (*id.*). Marquez notified Corrections of the incident and was told an investigation would be made (*id.*). Apparently accepting Robinson's account that the puppy was about to attack him, and in violation of the Department's own rules, the Department never performed a full investigation (*id.*). The file was subsequently closed and no disciplinary action was ever taken (*id.*). Robinson was not suspended and his privilege to carry a pistol while off duty was not revoked (*id.* at 576).

Two years later, while off duty, Robinson shot and wounded two men following a traffic dispute (*id.* at 574). After shooting one of the men in the hip and one in the abdomen, Robinson approached and kicked one of them in the head (*id.*). Despite his assertion that the two men had attacked him, the only injury Robinson sustained was a bruised right foot (*id.*). After a bifurcated nonjury trial, the State was found not liable. This Court reversed the trial court's dismissal, finding that the negligent supervision and retention claim was supported by the fact that Corrections had failed to comply with its own disciplinary rules (*id.* at 576) This Court reasoned, "[S]uch omission cannot be cured by later supposition that, had a proper investigation been made of the 1984 incident, the employee's status would have remained unchanged" (*id.* at 576-577).

Likewise, in *Jones v City of Buffalo* (267 AD2d 1101 [1999]), the Appellate Division, Fourth Department, found that the City of Buffalo could be held liable for placing a police officer who was known to be violent in a position in which he could harm others. In Jones, the off-duty police officer, who was estranged from his wife, shot and seriously wounded her. Prior

to the shooting, the officer had informed his superiors of a previous assault and arrest, but no action was taken against him. The wife's claims included negligent retention and failure to provide psychological services. The Fourth Department upheld the motion court's denial of the City's motion for summary judgment as to those claims because there were genuine issues of material fact as to whether the City negligently retained the officer and failed to provide him with psychological services following his first violent assault on his wife.

As *McCrink*, *Wyatt* and *Jones* illustrate, the torts of negligent retention and supervision of governmental employees with dangerous propensities do not specifically require allegations that the employees' misconduct occur within the course and scope of the employment. Rather, what the plaintiff must demonstrate is a connection or nexus between the plaintiff's injuries and the defendant's malfeasance. In this case, plaintiff alleges such a connection or nexus. The City is alleged to have played a part in both creating the danger (by training and arming an officer) and rendering the public more vulnerable to the danger (by allowing him to retain his weapon and ammunition after it allegedly learned of his dangerous propensities). Thus, Officer Maselli's alleged tort was made possible through the use of his pistol, which he carried by authority of the City.

In our view, both the type of harm that occurred and the person on whom the injury was inflicted were foreseeable within a degree of acceptability recognized by New York law. Clearly, the government has a duty to minimize the risk of injury to members of the public that is presented by the policy of permitting police officers to carry guns off duty. The City could reasonably have anticipated that its negligence in failing to discipline an officer who had violent propensities would result in the officer injuring someone with his gun. Thus, when an officer misuses his weapon, a jury might reasonably find that the misuse was proximately caused by the government's negligence, if proved, in supervising or retaining a police officer with known violent propensities. Furthermore, it was reasonably foreseeable that such an officer would injure a member of his own family, including his girlfriend. "An intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 316 [1980]; *see also Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 520-521 [1980];

*Pagan v Goldberger*, 51 AD2d 508 [2d Dept 1976]), and the occurrence of that act did not approach that degree of attenuation condemned in *Palsgraf* (248 NY at 342-344; Restatement [Second] of Torts §§ 448-449).

We are not persuaded that the cases relied on by defendant mandate a different result. In *Maldonado v Hunts Point Coop. Mkt., Inc.* (82 AD3d 510 [1st Dept 2011], *lv denied* 17 NY3d 702 [2011]), the plaintiff was shot and injured by her boyfriend, Machado, during a domestic dispute in their home. Machado used a revolver he had surreptitiously removed from Hunts Point Produce Market, where he worked as a security guard, and concealed before leaving work. After shooting the plaintiff, Machado shot and killed himself. This Court found that Hunts Point was not negligent in entrusting Machado with a weapon to use for security purposes at his employer's premises. Apparently, in this Court's view, the injured party was not a foreseeable plaintiff—that is, she was not within the zone of danger created by the defendant's action. In that respect we agree with *Maldonado*, that the security guard's unauthorized and surreptitious removal of a revolver from his place of employment and subsequent use during a domestic dispute was not a risk created by entrusting the gun to the security guard to use only at work.

*Maldonado*, however, also held, albeit in dicta, that even if the employer breached a duty of care arising from entrustment of a firearm to the security guard, any such breach did not proximately cause the girlfriend's injuries because the guard was not acting within the scope of his employment when he shot the girlfriend, and his independent intervening acts arising out of their personal relationship severed any nexus between the employer's alleged negligence and the girlfriend's injuries. Thus, while not explicitly discussed, it appears that in *Maldonado*, in the private employment context, this Court viewed New York law as limiting a foreseeable plaintiff and harm, both in the context of duty and proximate cause, to only those members of the public who have a connection to the defendant employer's business.

The instant case, however, involves the type of governmental inaction like that in *McCrink*, *Wyatt* and *Jones*, where the Court of Appeals, the Fourth Department and this Court all have declined to draw a bright-line rule that would preclude recovery in a negligent hiring or retention claim in situations where, as here, the city employee was not acting within the

course of his employment. In our view, whether the city employee was acting within the course and scope of employment in this factual scenario is a relevant factor that the jury may consider in determining foreseeability of harm in the context of proximate cause, but it is not dispositive as a matter of law, in all instances.

Nor are we persuaded that *Cardona v Cruz* (271 AD2d 221 [1st Dept 2000]) should control here. In that case, a police officer entered a restaurant while off duty and in civilian clothes, and, with his off-duty revolver in his hand, approached within four or five feet of the plaintiff, yelled and cursed at him, shot him once in the head, and then threw at him a summons and temporary order of protection issued on behalf of a woman who was the officer's ex-wife and the plaintiff's girlfriend. This Court found that the City couldn't be held liable, under a theory of respondeat superior, for those actions because the defendant police officer was acting purely out of personal motives, and not within the scope of his employment or in furtherance of the City's interests.

With regard to negligent hiring and training claims, the *Cardona* court also held that "[l]eave to amend the complaint was also properly denied, as plaintiff's factual allegations were insufficient to support his claim that the City was negligent in hiring, training, supervising or retaining defendant police officer" (271 AD2d at 222). Significantly, *Cardona* did not find that the tort claim (negligence in hiring, training, supervising or retaining defendant police officer) was deficient because of the lack of any factual allegation on the issue of notice of any violent propensity on the part of the officer. Rather, *Cardona* held that such tort claim was deficient because, "[a]s the officer was not acting within the scope of his employment or under the City's control, any alleged deficiency in its hiring or training procedures could not have proximately caused plaintiff's injuries" (*id.*).

We find the implications of this secondary holding in *Cardona* problematic. Carried to its logical conclusion, *Cardona* appears to hold that a connection between a police officer's employment and the injured plaintiff (i.e. that the officer's misconduct toward the injured plaintiff occurred while he was on duty) is a sine qua non for imposing liability on the City under the theory of negligent hiring and retention of a police officer with violent propensities. Such limitations, however, would be inconsistent with the Court of Appeals holding in *Mc-*

*Crink* and its progeny, and we therefore decline to follow it. Significantly, the cases cited by *Cardona*, namely *K.I. v New York City Bd. of Educ.* (256 AD2d 189, 192 [1st Dept 1998]) and *McDonald v Cook* (252 AD2d 302, 305 [3d Dept 1998], *lv denied* 93 NY2d 812 [1999]), do not support such a limited scope of liability toward the City for negligently hiring, retaining or supervising a police officer with violent propensities. In fact, neither case relied upon by *Cardona* addresses, let alone distinguishes, the Court of Appeals precedent, clearly applicable here, of *McCrink* and its progeny, as to whether the City negligently retained or supervised a police officer by placing the officer who was known to be violent in a position in which he could harm others.

Finally, we are cognizant of the fact that all police officers involved in this case have adamantly denied ever receiving even a single complaint about the offending officer's alleged violent propensities. In contrast, plaintiff has presented evidence that the City was informed on numerous occasions, prior to the fatal shooting, about the officer's abusive conduct toward Fontanez and her daughter. Under the circumstances, this case presents genuine issues of material fact as to whether the City negligently supervised and retained an officer with violent propensities, and whether the intervening intentional tort of the off-duty officer was itself a foreseeable harm that shaped the duty imposed upon the City when it failed to guard against a police officer with violent propensities. When such questions of breach of duty and proximate cause exist, summary judgment is not proper. These questions of fact must be reserved for the jury. The City's motion for summary judgment on the issue of proximate cause should have been denied.

Accordingly, the order of the Supreme Court, Bronx County (Larry S. Schachner, J.), entered February 13, 2014, which granted defendant's motion for summary judgment dismissing the complaint should be reversed, on the law, without costs, and defendant's motion denied.

Acosta, J.P., Moskowitz, Manzanet-Daniels and Feinman, JJ., concur.

Order, Supreme Court, Bronx County, entered February 13, 2014, reversed, on the law, without costs, and defendant's motion denied.