Crandall v Equinox Holdings, Inc. (2024 NY Slip Op 04902)

Crandall v Equinox Holdings, Inc.

2024 NY Slip Op 04902

Decided on October 08, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 08, 2024

Before: Manzanet-Daniels, J.P., Singh, Mendez, Rosado, O'Neill Levy, JJ. 

Index No. 157373/18 Appeal No. 2758-2759 Case No. 2023-04948 

[*1]Shane Crandall, Plaintiff-Appellant,
v
Equinox Holdings, Inc. Doing Business as Equinox Fitness Club Doing Business as Equinox et al., Defendants-Respondents.

Held & Hines, LLP, Brooklyn (Uri Nazryan of counsel), for appellant.
LaRocca, Hornik, Greenberg, Kittredge, Carlin & McPartland LLP, New York (John L. Garcia of counsel), for respondents.

Judgment, Supreme Court, New York County (Arlene P. Bluth, J.), entered December 4, 2023, in favor of defendants Equinox Holdings, Inc. d/b/a Equinox Fitness Club d/b/a Equinox, Equinox Greenwich Avenue, Inc., (together, Equinox), Nick Hammond, and Jose Taveras, pursuant to an order, same court and Justice, entered July 7, 2023, granting defendants' motion for summary judgment dismissing the complaint as against them and awarding them costs and disbursements, unanimously modified, on the law, to deny the motion as to the negligence claims against Equinox, and otherwise affirmed, without costs.
Plaintiff alleges that he was sexually assaulted on August 2017, by another gym member (GM) in the men's steam room at an Equinox facility located at 97 Greenwich Avenue in New York. Plaintiff claims that GM exposed himself to him, began masturbating, and continued to do so while physically restraining plaintiff from leaving the steam room.
In August 2018, plaintiff commenced this action against defendants for negligence, negligent security, and negligent hiring, training, and supervision, among other causes of action.
Plaintiff testified at his deposition that he immediately reported the incident to a locker room attendant, who then called for management. When GM exited the steam room, plaintiff pointed him out to Equinox staff as the man who assaulted him, but the staff "weren't doing anything." A general manager then spoke to him and told him that GM's membership would be revoked, and plaintiff went home. The following day, plaintiff went back to Equinox to follow up with the same general manager regarding the incident. Plaintiff alleges that the general manager told him that "this happens all the time" and "there is nothing we can do about it." Plaintiff also spoke to two other employees, both of whom allegedly stated that the gym had received multiple complaints of inappropriate behavior occurring in the steam room.
During discovery, Equinox produced 13 incident reports and responses to complaints of inappropriate behavior in the Greenwich location steam room dating back to November 2011. One of the complaints, submitted a little over a month before plaintiff's incident, stated that the member had "been masturbated at twice" and "sexually harassed." Several of the other complaints detail similar behavior, and the other incidents involved members walking into the steam room and catching others engaged in apparently consensual sexual activity.
In support of their motion for summary judgment to dismiss plaintiff's complaint, defendants submitted an affidavit from Equinox's senior director for club operations stating that Equinox has "at least one maintenance employee assigned to monitor each locker room at all times," "trained its maintenance staff to periodically open the steam room doors to check if any inappropriate behavior was occurring inside," and "trained its staff to report to the front desk or a manager if they observe personally, or someone [*2]reports to them, any inappropriate behavior in the steam room." The affidavit also stated that Equinox "posted a sign outside the steam room that advised, among other things, that Equinox has a 'zero tolerance' policy towards inappropriate behavior and that offending members will lose their membership" and that "[p]ursuant to this 'zero tolerance' policy, any member found to have engaged in inappropriate behavior in the steam room would have their membership cancelled."
In response to such incidents, Equinox developed a template response to inappropriate behavior in the steam rooms, which stated that Equinox staff would need to witness the inappropriate behavior firsthand for the offender's membership to be revoked. The record shows that this practice was followed in regard to some complaints of sexual misconduct in the steam room. However, Equinox also produced emails demonstrating that at least some members who had been positively identified as engaging in such behavior had their memberships cancelled.
Supreme Court granted summary judgment to defendants. As to plaintiff's negligence claim, the court found that plaintiff's alleged assault was not foreseeable "because there is no evidence that defendants had reason to suspect that the purported assailant would commit the acts alleged here," defendants "did not have the ability and opportunity to control the conduct at issue through the exercise of reasonable measures" (internal citation omitted), and plaintiff failed to raise a material issue of fact. The court also dismissed plaintiff's negligent hiring, training, and supervision claim and his claims against the individual defendants as derivative.
Plaintiff now argues that his negligence claim should not have been dismissed because the motion court "usurped a factual determination that should have been reserved for the jury."
The Court of Appeals has "repeatedly emphasized" that "[o]nly in rare cases" can questions concerning foreseeability be decided as a matter of law (Scurry v New York City Hous. Auth., 39 NY3d 443, 454 [2023] [internal quotation marks omitted]). As questions concerning what is foreseeable "may be the subject of varying inferences, whether an intervening act is foreseeable or extraordinary under the circumstances generally is for the fact finder to resolve" (id. [internal quotation marks omitted]). Further, "there 'may be more than one proximate cause of an injury,' and it is 'well settled . . . that where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed" (id. at 454-455 [omission in original], quoting Turturro v City of New York, 28 NY3d 469, 483-484 [2016]).
Here, the motion court determined that plaintiff's alleged attack was not foreseeable because "the 'notice' plaintiff relies upon concerns other alleged incidents in the steam room, none of which involved plaintiff's assailant" and that "some of the other incidents [*3]appear to involve consensual behavior." New York courts, however, have never required prior incidents to have been committed by the same assailant or even be of the same type of conduct to which the plaintiff was subjected (see Jacqueline S. v City of New York, 81 NY2d 288, 294 [1993]; Miller v State of New York, 62 NY2d 506, 508-509 [1984]; Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 519-520 [1980]). Although some of the incidents did involve Equinox members walking in on seemingly consensual sexual behavior, at least three of the other gym members reported that they had been sexually harassed, including the member who complained mere weeks before the assault on plaintiff (see Baez v 2347 Morris Realty, Inc., 69 AD3d 480, 480-481 [1st Dept 2010]).
The motion court additionally found that, even if defendants did have a duty to plaintiff to prevent his alleged assault, "they met their duty to implement reasonable policies to decrease the likelihood of such an incident" and plaintiff failed to present a material issue of fact "with respect to these policies and procedures."
The record here is devoid of any evidence demonstrating that the training and practices cited in the affidavit of Equinox's senior director for club operations were actually implemented (see Rivera v 1652 Popham Assoc., LLC, 31 AD3d 297, 298 [1st Dept 2006] ["Defendants provided no building records to substantiate their vague claims of regular maintenance"]). Furthermore, there is evidence in the record that Equinox's "zero-tolerance" policy was only enforced when employees witnessed the offending behavior.
We find that whether plaintiff's alleged assault was foreseeable to Equinox and whether Equinox implemented adequate security measures to decrease the likelihood of such incidents are questions of fact and plaintiff's negligence claim should advance to a jury trial. We cannot say, as a matter of law, that another gym member allegedly assaulting plaintiff against the backdrop of multiple complaints of inappropriate sexual conduct inside the steam room was "extraordinary under the circumstances or not foreseeable in the normal course of events" (see Scurry, 39 NY3d at 457 [alteration and internal quotation marks omitted]).
The motion court properly dismissed plaintiff's negligent hiring, training, and supervision claim against Equinox for allegedly failing to train its employees to deal with sexual assault. The record is devoid of any evidence, let alone allegation, that employees were acting outside the scope of their employment to render Equinox liable for their conduct; to the extent plaintiff's claim appears to invoke the principles of respondeat superior, such claim cannot stand in the absence of any underlying claim of negligence (see Gonzalez v City of New York, 133 AD3d 65, 67 [1st Dept 2015]).
The motion court properly dismissed the claims against Nick Hammond and Jose Taveras, two Equinox employees, neither of whom worked at the location where the alleged assault [*4]took place nor were present when it happened. Accordingly, these individual defendants did not owe plaintiff a duty to give rise to liability (see generally Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 232 [2001]). THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 8, 2024