**Doe v Archdiocese of N.Y.**

2026 NY Slip Op 31060(U)

March 18, 2026

Supreme Court, New York County

Docket Number: Index No. 950683/2020

Judge: Sabrina Kraus

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**

PRESENT:    **HON. SABRINA KRAUS**                    PART          CVA – 1
                                          *Justice*

-------------------------------------------------------------------------------X

JOHN DOE, whose initials are A.L.,

                          Plaintiff,

            - v -

ARCHDIOCESE OF NEW YORK, CHRIST THE KING
CHURCH, and CHRIST THE KING SCHOOL

                          Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 950683/2020 |
| MOTION DATE | 02/05/2026 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 1, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92

were read on this motion to/for            JUDGMENT - SUMMARY            .

## BACKGROUND

Plaintiff commenced this action pursuant to the Child Victims Act ("CVA") seeking damages for child sexual abuse allegedly perpetrated by Father John O'Keefe ("O'Keefe") while he was an altar boy at Christ the King Church. Plaintiff asserts causes of action for negligence against each defendant.

## FACTS

The following facts are derived from admissions within the parties' statements of material facts.

Christ the King Church (the "Church") and Christ the King School (the "School") were a Roman Catholic parish and high school located within the ecclesiastical territory of the Archdiocese of New York. O'Keefe was a priest at Christ the King Church, and Plaintiff began serving as altar boy under O'Keefe from 1978 onward.

The following facts derive from Plaintiff's testimony.

950683/2020   DOE, whose initials are A.L., JOHN vs. ARCHDIOCESE OF NEW YORK ET AL.          Page 1 of 9
Motion No.  002

1 of 9

Plaintiff's service as an altar boy included regular Sunday masses, some Saturday masses and funerary services. Behind the altar in the Church was a dressing room for the altar boys to change into their robes.

The first instance of abuse occurred after mass. While Plaintiff was changing out of his robe, O'Keefe approached Plaintiff from behind, rubbed his back and told Plaintiff how strong he was. No additional inappropriate touching occurred during this incident.

O'Keefe escalated the abuse several weeks later during the second incident. After mass when the two were alone, O'Keefe once again approached Plaintiff from behind and rubbed his back in the changing room. O'Keefe told Plaintiff that he viewed himself as Plaintiff's father figure, and he then exposed his penis to Plaintiff and directed Plaintiff to "play with it." O'Keefe then forced Plaintiff to perform oral sex upon him.

Plaintiff was abused by O'Keefe several more times in the dressing room behind the altar, testifying that O'Keefe would wait for the two to be alone whereafter Plaintiff would perform oral sex upon O'Keefe.

O'Keefe also abused Plaintiff in the Church's rectory, the building in which a parish's priests are housed. The rectory was across the street from the Church. On one occasion after a Saturday night mass, O'Keefe asked Plaintiff to help him with moving boxes in the rectory. Plaintiff and O'Keefe went into O'Keefe's room within the rectory, and as the two moved around the boxes, O'Keefe again exposed his penis, directed Plaintiff to touch it with his hands and then made Plaintiff perform oral sex upon him.

Plaintiff testified that the abuse never occurred at the School. He also testified that he never told anyone at the Church or School about the abuse.

**950683/2020   DOE, whose initials are A.L., JOHN vs. ARCHDIOCESE OF NEW YORK ET AL.**          **Page 2 of 9**
**Motion No.  002**

2 of 9

## PENDING MOTION

On March 12, 2026, the Church and School (collectively, "Defendants") moved for an order granting summary judgment dismissing Plaintiff's complaint as against them (NYSCEF Doc No. 68 [mot. seq. 002]).

The motion was fully briefed and marked submitted on March 18, 2026, and the Court reserved decision.

The Court denies the motion for the reasons set forth below.

## DISCUSSION

Summary judgment is a drastic remedy reserved for cases where "no material and triable issue of fact is presented" (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]). To prevail on summary judgment, the movant must establish *prima facie* entitlement to judgment as a matter of law, tendering evidence in admissible form demonstrating the absence of triable issues of fact (CPLR § 3212(b); *Matter of New York City Asbestos Litig.*, 33 NY3d 20, 25–26 [2019]). A defendant's burden on summary judgment cannot be satisfied by "merely point[ing] to perceived gaps" in the plaintiff's proof "rather than submitting evidence showing why" the plaintiff's claim fails (*Matter of New York City Asbestos Litig.*, 174 AD3d 461, 461 [1st Dept 2019] [alteration in original]).

When the movant meets this burden, summary judgment will be denied only when the nonmovant provides evidence in admissible form demonstrating the existence of triable issues of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). However, "[m]ere conclusions, expressions of hope, or unsubstantiated allegations or assertions are insufficient" to defeat summary judgment (*Justinian Capital SPC v WestLB AG*, 28 NY3d 160, 168 [2016] [alteration in original]). Courts view the evidence in a light most favorable to the nonmovant and accord the

950683/2020   DOE, whose initials are A.L., JOHN vs. ARCHDIOCESE OF NEW YORK ET AL.          Page 3 of 9
Motion No.  002

3 of 9

nonmovant "the benefit of every reasonable inference" (*Negri v Stop & Shop, Inc.*, 65 NY2d 625, 626 [1985]).

### *Defendants Could Have Been on Notice as to O'Keefe's Abusive Propensities or Conduct*

Defendants argue that they are entitled to summary judgment because they were not on notice of O'Keefe's propensity for abuse of children or his actual abuse of Plaintiff.

Under the theory of negligent hiring, retention and supervision, an employer is liable to a third party for the tortious conduct of an employee when "an employer knew of its employee's harmful propensities, that it failed to take necessary action, and that this failure caused damage to others" (*Waterbury v New York City Ballet, Inc.*, 205 AD3d 154, 160 [1st Dept 2022], citing *Gonzalez v City of New York*, 133 AD3d 65, 67–68 [1st Dept 2015]). An employer possesses culpable knowledge when the employer is on actual or constructive notice of an employee's tortious propensities or conduct (*Nellenback v Madison County*, 44 NY3d 329, 334–35 [2025]; *Norris v Innovative Health Sys., Inc.*, 184 AD3d 471, 473 [1st Dept 2020]). Constructive notice arises when the employer "has *reason* to know of the facts or events evidencing that propensity" (*Nellenback*, 44 NY3d at 335 [emphasis in original]).

Defendants argue that they were not on actual or constructive notice of O'Keefe's abusive propensities or conduct as Plaintiff testified that he believed no one witnessed the abuse nor did he ever tell anyone at the School or Church about the abuse. Defendants also cite Plaintiff's testimony where Plaintiff testified contradictorily as to whether other priests were present at the rectory during the time of the abuse.

Defendants fail to make out a *prima facie* case on these submissions. A jury could both find that priests were the agents of the Defendants and that other priests were present at the

**950683/2020   DOE, whose initials are A.L., JOHN vs. ARCHDIOCESE OF NEW YORK ET AL.**          **Page 4 of 9**
**Motion No.  002**

[* 4]                                                    4 of 9

rectory when Plaintiff was allegedly abused.[1] Plaintiff's conflicting testimony as to whether the priests were present at the rectory also does not establish Defendants' *prima facie* case, but it raises a triable issue of fact as to whether Defendants were on constructive notice of O'Keefe's abusive propensities or conduct (*see Armental v 401 Park Ave. S. Assoc., LLC*, 182 AD3d 405, 408 [1st Dept 2020] [*holding that conflicting testimony presents a triable issue of fact upon which the jury must deliberate*]). Additionally, Plaintiff's inability to identify specific witnesses at the rectory merely points to gaps in Plaintiff's proof and is insufficient to establish Defendants' *prima facie* case (*see Matter of New York City Asbestos Litig.*, 174 AD3d 461, 461 [1st Dept 2019]). It is also a question of fact whether the Church's allowing priests to bring young children into the rectory unsupervised was negligent.

Defendants' own witness testify that he had no knowledge of the Defendants' procedures for the hiring or supervision of clergyman who worked with children during the time of Plaintiff's alleged abuse (*see* NYSCEF Doc No. 72, at 111–12, 132–33), and repeatedly testified that he had no knowledge of information relevant to the lawsuit despite Defendants having been served with a list of deposition topics prior to his deposition (*see* NYSCEF Doc No. 77 ¶ 23; NYSCEF Doc No. 92 ¶ 23 [*parties' statements of material facts*]). This professed lack of knowledge does not establish defendants' right to judgment as a matter of law.

Defendants' reliance on the Court of Appeals' decision in *Nellenback v Madison County* is also misplaced as that case involved a different factual scenario from Plaintiff's. The *Nellenback* plaintiff was a foster child under the custody of the county who alleged that he was

---

[1] The Court accords no weight to Defendants' argument raised for the first time in reply that O'Keefe was only an agent of the Archdiocese, and not Christ the King Church or School, as no weight is to be accorded to novel arguments raised in reply (*Matter of Gonzalez v City of New York*, 127 AD3d 632, 633 [1st Dept 2015]). In any event, Defendants' attempt to use the Court's November 5, 2025, decision and order that deemed O'Keefe an agent of the Archdiocese is unpersuasive as  O'Keefe's being an agent of the Archdiocese does not also preclude his being an agent of the Defendants (*see* NYSCEF Doc No. 63).

**950683/2020   DOE, whose initials are A.L., JOHN vs. ARCHDIOCESE OF NEW YORK ET AL.**          **Page 5 of 9**
**Motion No.  002**

5 of 9

abused by a county employee while off the county's premises in the employee's car and in a motel (44 NY3d 329, 331–32 [2025]). The Court of Appeals held that the county could not have had any opportunity or reason to know about the abuse under such circumstances (*id.* at 334–35). The Court of Appeals also held that the county's lack of records detailing plaintiff's interactions with the employee was unsuspicious as the records of foster children are routinely destroyed ten years after the child reaches the age of eighteen (*id.* at 335–36). Unlike *Nellenback*, Plaintiff alleges repeated abuse over the course of a year in two separate locations on the Defendants' premises and possibly in the presence of agents of the Defendants.

Defendants' argument that Plaintiff's claim fails under the theory of *respondeat superior* is immaterial as Plaintiff's theory of liability is to Defendants' negligence in hiring, retaining and supervising O'Keefe and that cause of action does not require that the employee's harm inflicted upon another occur within the scope of employment (*see Gonzalez v City of New York*, 133 AD3d 65, 67 [1st Dept 2015] ["In contrast, under the theory of negligent hiring and retention, an employer may be liable for the acts of an employee acting outside the scope of his or her employment"]).

Furthermore, Defendants make two unavailing arguments regarding Plaintiff's negligence claims under *in loco parentis*. Defendants first argue that the Church cannot be held liable under a duty *in loco parentis* as the Church was not an educational institution. Ordinarily, a school standing *in loco parentis* of a child has a duty to supervise and protect the child from foreseeable harm as would a parent of ordinary prudence while the child is in their custody and control (*John Doe 42 v Yeshiva Univ.*, 245 AD3d 545, 546–47 [1st Dept 2026]). While the ordinarily prudent parent standard most commonly applies to schools, various Departments in this State have held that the standard also applies to noneducational entities and persons who

[* 6]

assume physical custody of children (*e.g. Wynn v Little Flower Children's Servs.*, 106 AD3d 64, 69 [1st Dept 2013] [*childcare provider*]; *Gonzales v Munchkinland Child Care, LLC*, 89 AD3d 987, 987 [2d Dept 2011] [*daycare center*]; *Mary Ann "ZZ" v Blasen*, 284 AD2 773, 775 [3d Dept 2001] [*adult neighbor assuming a supervisory duty of plaintiff's daughter*]). Given that the Church operated a program for altar boys to serve under O'Keefe's direction, the Church assumed physical custody of Plaintiff while he participated in the program, which would impute a duty onto the Church *in loco parentis*. Additionally, the Church had a duty as owner of the premises where the abuse took place (*Duclos v County of Monroe*, 258 AD2d 925, 926 [4th Dept 1999]).

Moreover, although the ordinarily prudent parent standard usually applies to a duty to protect and supervise a child when a defendant stands *in loco parentis*, the standard may also apply to a negligent hiring, retention and supervision claim as against the same defendant (*see Doe v Jagiello*, 242 AD3d 1549, 1551 [4th Dept 2025] ["[T]he concept [of *in loco parentis*] may be applicable to plaintiff's claims for negligent retention and supervision"]).

Defendants' second argument regarding *in loco parentis* is that the School had no duty to protect Plaintiff when he was allegedly abused at the Church and rectory because the abuse only occurred off the School property. "[A]lthough a school district's duty of care toward a student generally ends when it relinquishes custody of the student, the duty continues when the student is released into a potentially hazardous situation, *particularly when the hazard is partly of the school district's own making*" (*Ernest v Red Creek Cent. Sch. Dist.*, 93 NY2d 664, 671 [1999] [emphasis added]; *see also C.M. v West Babylon Union Free Sch. Dist.*, 231 AD3d 809, 812–13 [2d Dept 2024 [*holding that defendant-school may be liable in loco parentis for plaintiff's sexual abuse by a teacher that occurred off the schoolgrounds when the school knew or had reason to*

950683/2020   DOE, whose initials are A.L., JOHN vs. ARCHDIOCESE OF NEW YORK ET AL.          Page 7 of 9
Motion No.  002

7 of 9

*know of the teacher's propensities and allowed the child to be taken home by the teacher*]). The School may have shared culpability in Plaintiff's having been abused by O'Keefe as Plaintiff testified during a discussion about the School that he became an altar boy after it was advertised that altar boys were needed at the Church (NYSCEF Doc No. 70, at 116–17). Plaintiff also testified that the trainings for the altar boy were done after School (*id.* at 119–20) and that O'Keefe was affiliated with the School's basketball program (NYSCEF Doc No. 71, at 232–33). The School thus could have had reason to know that O'Keefe had a propensity for abuse of children and released Plaintiff into that hazardous situation.

Moreover, the School and the Church are connected and did not act as separate unaffiliated entities but acted collectively towards plaintiff in both his education and religious training. Defendant's own submissions show that they owned and operated the Church and School. Plaintiff testified that he was at school during school hours when he was allowed to leave with a priest unsupervised to assist the priest alone in the rectory. Plaintiff further testified that he was often left unsupervised at the Church where he was abused by O'Keefe after Sunday mass. Plaintiff and another victim both testified that O'Keefe was freely able to bring them up to his private bedroom in the rectory where O'Keefe would sexually abuse his victims.

As stated above, Defendants' own witness repeatedly testified that he had no knowledge of the facts or circumstances relevant to the present case, so Defendants have not made a *prima facie* case that the School had no affiliation with the altar boy program and thus no part in exposing Plaintiff to the risk of O'Keefe's sexual abuse as their motion merely points to gaps in Plaintiff's proof rather than submitting evidence demonstrating why his claim must fail.

950683/2020   DOE, whose initials are A.L., JOHN vs. ARCHDIOCESE OF NEW YORK ET AL.          Page 8 of 9
Motion No.  002

8 of 9

Accordingly, the Court denies Defendants' motion as they fail to establish that they had "no opportunity or reason to know" about O'Keefe's abusive propensities or conduct (*Nellenback*, 44 NY3d 329, 337 [2025]).

## CONCLUSION

Accordingly, it is hereby:

ORDERED that the motion of Christ the King Church and Christ the King School (mot. seq. 002) is denied in its entirety; and it is further

ORDERED that the parties appear for a virtual pretrial conference on April 23, 2026, at 10:00 am where a final trial date will be set; and it is further

ORDERED that, within twenty (20) days from entry of this order, Plaintiff shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119, New York, NY 10007); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh).

This constitutes the decision and order of this Court.

20260318153136SBKRAUSBD9B6FE4D18E44B4B40CB5E1A6173C97

| 3/18/2026 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | **SABRINA KRAUS, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

950683/2020   DOE, whose initials are A.L., JOHN vs. ARCHDIOCESE OF NEW YORK ET AL.          Page 9 of 9
Motion No.  002

9 of 9